# PUBLIC SERVICE COMMISSION OF UTAH ET AL. *v.* WYCOFF COMPANY, INC.

No. 44. Argued November 13, 1952.—Decided December 22, 1952.

*Wood R. Worsley* argued the cause for petitioners. With him on the brief were *C. W. Ferguson* and *D. A. Skeen.*

*Harold S. Shertz* and *Wayne C. Durham* argued the cause and filed a brief for respondent.

*John P. Randolph* filed a brief for the National Association of Railroad and Utilities Commissioners, as *amicus curiae,* urging reversal.

MR. JUSTICE JACKSON delivered the opinion of the Court.

As this suit in equity was commenced in United States District Court it sought two kinds of specific relief: (1) a declaratory judgment that complainant's carriage of motion picture film and newsreels between points in Utah constitutes interstate commerce; (2) that the Public Service Commission of Utah and its members be forever enjoined from interfering with such transportation over routes authorized by the Interstate Commerce Commission.

The complaint alleged a course of importing, processing and transporting picture film and newsreels to support the contention that carriage between points in Utah was so integrated with their interstate movement that the whole constituted interstate commerce. It averred that the Commission and its members "threaten to and are attempting to stop and prevent plaintiff from transporting motion picture film and newsreels between points and places within the State of Utah, and they are thereby interfering with the conduct of interstate commerce by the plaintiff and imposing an undue burden upon interstate commerce," and that unless the defendants are enjoined they will "block, harass and prevent plaintiff in the transportation of said motion picture film and newsreels in Utah."

The Commission and its members answered that respondent's transportation between points in Utah was nothing more than intrastate commerce. They specifically denied attempting, threatening, or intending to interfere with or burden interstate commerce.

The District Court, after trial, sustained the contention of the Commission and dismissed the complaint. The Court of Appeals considered only "whether the intrastate transportations are nonetheless integral parts of in-

terstate transportations." [1]  It held the evidence to warrant an affirmative answer, reversed the judgment of the District Court and ordered further proceedings in conformity with that view.  We granted certiorari,[2] requesting counsel to discuss whether a single judge could hear and determine the case in view of 28 U. S. C. § 2281.  That section provides that an injunction restraining enforcement of a state statute or the order of an administrative body thereunder "shall not be granted" upon the ground of unconstitutionality unless the application is heard and determined by a district court of three judges as provided in 28 U. S. C. § 2284.

The respondent, which was plaintiff, contends that a three-judge court was not required, because the suit does not question constitutionality of any Utah statute nor the validity of any order of the State Commission.  It says also that no injunction has been granted or even urged "outside of the naked recitation in the prayer of the Complaint."  It offered no evidence whatever of any past, pending or threatened action by the Utah Commission touching its business in any respect.  The pleadings made that a clear-cut issue, which seems to have been completely ignored thereafter.  The only issues defined on pretrial hearing were whether as matter of fact and of law the within-state transportation constituted interstate commerce.  The trial court, however, made a general finding that no such interference had been made or threatened, which was not reversed or mentioned by the Court of Appeals.

For more reasons than one it is clear that this proceeding cannot result in an injunction on constitutional grounds.  In addition to defects that will appear in our discussion of declaratory relief, it is wanting in equity

---

[1] 195 F. 2d 252.
[2] 343 U. S. 975.

because there is no proof of any threatened or probable act of the defendants which might cause the irreparable injury essential to equitable relief by injunction.

The respondent appears to have abandoned the suit as one for injunction but seeks to support it as one for declaratory judgment, hoping thereby to avoid both the three-judge court requirement and the necessity for proof of threatened injury. Whether declaratory relief is appropriate under the circumstances of this case apparently was not considered by either of the courts below. But that inquiry is one which every grant of this remedy must survive.

The Declaratory Judgment Act of 1934, now 28 U. S. C. § 2201, styled "creation of remedy," provides that in a case of actual controversy a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.

Previous to its enactment there were responsible expressions of doubt that constitutional limitations on federal judicial power would permit any federal declaratory judgment procedure. Cf. *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70; *Willing* v. *Chicago Auditorium Assn.,* 277 U. S. 274; *Arizona* v. *California,* 283 U. S. 423; *Piedmont & N. R. Co.* v. *United States,* 280 U. S. 469. Finally, as the practice extended in the states, we reviewed a declaratory judgment rendered by a state court and held that a controversy which would be justiciable in this Court if presented in a suit for injunction is not the less so because the relief was declaratory. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288 U. S. 249. Encouraged by this and guided by the experience of the thirty-four states that had enacted such laws, the Senate Judiciary Committee recommended an adaptation of the principle to federal practice. Its enabling clause was narrower

than that of the Uniform Act adopted in 1921 by the Commissioners on Uniform State Laws, which gave comprehensive power to declare rights, status and other legal relations. The Federal Act omits status and limits the declaration to cases of actual controversy.[3]

This Act was adjudged constitutional only by interpreting it to confine the declaratory remedy within conventional "case or controversy" limits. In *Ashwander* v. *Tennessee Valley Authority*, 297 U. S. 288, 325, the Court said, "The Act of June 14, 1934, providing for declaratory judgments, does not attempt to change the essential requisites for the exercise of judicial power" which still was to be tested by such established principles as that "the judicial power does not extend to the determination of abstract questions" and that "claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention."

In *Aetna Life Insurance Co.* v. *Haworth*, 300 U. S. 227, Mr. Chief Justice Hughes used the whole catalogue of familiar phrases to define and delimit the measure of this new remedy. If its metes and bounds are not clearly marked, it is because his available verbal markers are themselves elastic, inconstant and imprecise. It applies, he points out, only to "cases and controversies in the constitutional sense" of a nature "consonant with the exercise of the judicial function" and "appropriate for judicial determination." Each must present a "justiciable controversy" as distinguished from "a difference or dispute of a hypothetical or abstract character . . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law

---

[3] See 28 U. S. C. § 2201.

would be upon a hypothetical state of facts." The relief is available only for a "concrete case admitting of an immediate and definitive determination of the legal rights of the parties." *Id.,* at 240, 241.

Other sources have stated relevant limitations. The Senate Judiciary Committee report regarded the 1,200 American decisions theretofore rendered on the subject as establishing that "the issue must be real, the question practical and not academic, and the decision must finally settle and determine the controversy."[4] Indeed the Uniform Act, unlike the Federal Act, expressly declares the discretion of the court to refuse a decree that would not "terminate the uncertainty or controversy giving rise to the proceeding." In recommending Rule 57 of the Federal Rules of Civil Procedure, in order to provide procedures for the declaratory decree, the Committee noted "A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case . . . ."[5]

But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especialy in the field of public law. A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case. Such differ-

---

[4] S. Rep. No. 1005, 73d Cong., 2d Sess., p. 6, May 10, 1934; Borchard, Declaratory Judgments (2d ed. 1941), 1043, 1048.

[5] Borchard, *op. cit.*, 1042.

ences of opinion or conflicts of interest must be "ripe for determination" as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.

The complainant in this case does not request an adjudication that it has a right to do, or to have, anything in particular. It does not ask a judgment that the Commission is without power to enter any specific order or take any concrete regulatory step. It seeks simply to establish that, as presently conducted, respondent's carriage of goods between points within as well as without Utah is all interstate commerce. One naturally asks, "So what?" To that ultimate question no answer is sought.

A multitude of rights and immunities may be predicated upon the premise that a business consists of interstate commerce. What are the specific ones in controversy? The record is silent and counsel little more articulate. We may surmise that the purpose to be served by a declaratory judgment is ultimately the same as respondent's explanation of the purposes of the injunction it originally asked, which is "to *guard against the possibility* that said Commission would attempt to prevent respondent from operating under its certificate from the Interstate Commerce Commission." (Emphasis supplied.)

In this connection, *Wycoff Co.* v. *Public Service Commission,* —— Utah ——, 227 P. 2d 323 (1951), is brought to our attention. From this it appears that respondent and its predecessors in interest long made it a practice to obtain from the Utah Commission certificates to authorize this carriage of film commodities between points in Utah. But the Supreme Court of Utah, in the cited case, sustained the Commission in denying such an application

upon a finding that the field already was adequately served. We are also told that the Commission filed a petition in a Utah state court to enjoin respondent from operating between a few specified locations within the State, but that process was never served and nothing in the record tells us what has happened to this action. We may conjecture that respondent fears some form of administrative or judicial action to prohibit its service on routes wholly within the State without the Commission's leave. What respondent asks is that it win any such case before it is commenced. Even if respondent is engaged solely in interstate commerce, we cannot say that there is nothing whatever that the State may require. *Eichholz* v. *Commission*, 306 U. S. 268, 273.

A declaratory judgment may be the basis of further relief necessary or proper against the adverse party (28 U. S. C. § 2202). The carrier's idea seems to be that it can now establish the major premise of an exemption, not as an incident of any present declaration of any specific right or immunity, but to hold in readiness for use should the Commission at any future time attempt to apply any part of a complicated regulatory statute to it. If there is any more definite or contemporaneous purpose to this case, neither this record nor the briefs make it clear to us. We think this for several reasons exceeds any permissible discretionary use of the Federal Declaratory Judgment Act.

In the first place, this dispute has not matured to a point where we can see what, if any, concrete controversy will develop. It is much like asking a declaration that the State has no power to enact legislation that may be under consideration but has not yet shaped up into an enactment. If there is any risk of suffering penalty, liability or prosecution, which a declaration would avoid, it is not pointed out to us. If and when the State Commission takes some action that raises an issue of its power,

some further declaration would be necessary to any complete relief. The proposed decree cannot end the controversy.

Nor is it apparent that the present proceeding would serve a useful purpose if at some future date the State undertakes regulation of respondent. After a sifting of evidence and a finding of facts as they are today, there is no assurance that changes of significance may not take place before the State decides to move. Of course, the remedy is not to be withheld because it necessitates weighing conflicting evidence or deciding issues of fact as well as law. That is the province of courts. *Aetna Life Insurance Co.* v. *Haworth, supra,* at 242, and see *Perkins* v. *Elg,* 307 U. S. 325; *Currin* v. *Wallace,* 306 U. S. 1. But when the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted. Cf. *Coffman* v. *Breeze Corporations, Inc.,* 323 U. S. 316.

Even when there is no incipient federal-state conflict, the declaratory judgment procedure will not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review. It would not be tolerable, for example, that declaratory judgments establish that an enterprise is not in interstate commerce in order to forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or many agencies that are authorized to try and decide such an issue in the first instance. Cf. *Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41; *Eccles* v. *Peoples Bank,* 333 U. S. 426. See *Colegrove* v. *Green,* 328 U. S. 549. Responsibility for effective functioning of the administrative process can-

not be thus transferred from the bodies in which Congress has placed it to the courts.

But, as the declaratory proceeding is here invoked, it is even less appropriate because, in addition to foreclosing an administrative body, it is incompatible with a proper federal-state relationship. The carrier, being in some disagreement with the State Commission, rushed into federal court to get a declaration which either is intended in ways not disclosed to tie the Commission's hands before it can act or it has no purpose at all.

Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system. State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State. We have disapproved anticipatory declarations as to state regulatory statutes, even where the case originated in and was entertained by courts of the State affected. *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450. Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism. Is the declaration contemplated here to be *res judicata,* so that the Commission cannot hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State Commission before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

The procedures of review usually afford ample protection to a carrier whose federal rights are actually invaded, and there are remedies for threatened irreparable injuries. State courts are bound equally with the federal courts by

the Federal Constitution and laws. Ultimate recourse may be had to this Court by certiorari if a state court has allegedly denied a federal right.

In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed.[6] The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law. *Tennessee* v. *Union & Planters' Bank,* 152 U. S. 454; *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22; *Taylor* v. *Anderson,* 234 U. S. 74.

Since this case should be dismissed in any event, it is not necessary to determine whether, on this record, the

---

[6] See, Developments in the Law—Declaratory Judgments, 62 Harv. L. Rev. 787, 802.

alleged controversy over an action that may be begun in state court would be maintainable under the head of federal-question jurisdiction. But we advert to doubts upon that subject to indicate the injury that would be necessary if the case clearly rested merely on threatened suit in state court, as, for all we can learn, it may.

We conclude that this suit cannot be entertained as one for injunction and should not be continued as one for a declaratory judgment. The judgment below should be reversed and modified to direct that the action be dismissed.

*Reversed and so ordered.*

Mr. Justice Reed, concurring.

The record, although uncertain and unsatisfactory, convinces me that a suit was filed in the state court by the Public Service Commission of Utah. This state suit evidently sought to prevent respondent from transporting motion picture film and newsreels between points and places within the State of Utah. This is the portion of transportation between out-of-state points and motion picture exhibitors within Utah that raises the question as to the authority of respondent to operate under the Interstate Commerce Commission certificate. The films are unloaded at Salt Lake City, where they are prepared for exhibition, and stored by the owners until ordered out to the exhibition points. They are then again loaded on respondent's trucks and delivered to the exhibitors. If this final part of the transportation continues the interstate commerce, respondent would be free to operate without further authority from the Utah Commission. If it is intrastate commerce, respondent would need further authority from Utah. It was apparently to determine this question that the Utah Commission filed its suit in the state court. No process was

served. Thereafter respondent instituted this proceeding for a declaratory judgment.

The authority for this litigation is the Declaratory Judgment Act of 1934, 28 U. S. C. § 2201. This provides for a judgment declaring "the rights and other legal relations of any interested party" in cases "of actual controversy."

The Act was intended by Congress as a means for parties in such controversies as that between this interstate carrier and the Utah Commission to settle their legal responsibilities and powers without the necessity and risk of violation of the rights of one by the other. The controversy here is clear and definite. A decision would settle the issue that creates the uncertainty as to the parties' rights. See *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227. The Act intended operations to be conducted in the light of knowledge rather than the darkness of ignorance. S. Rep. No. 1005, 73d Cong., 2d Sess.

However, it was recognized that the Declaratory Judgment Act introduced a new method for determining rights into the body of existing law. Therefore the language of the Act was deliberately cast in terms of permissive, rather than mandatory, authority to the courts to take cognizance of petitions seeking this new relief.[1] This enables federal courts to appraise the threatened injuries to complainant, the necessity and danger of his acting at his peril though incurring heavy damages, the adequacy of state or other remedies, particularly in controversies with administrative bodies. But even in respect to controversies with administrative bodies, the Declaratory Judgment Act exists as an instrument to protect the citizen against the dangers and damages that may result

---

[1] H. R. Rep. No. 1264, 73d Cong., 2d Sess., p. 2; Borchard, Declaratory Judgments (2d ed. 1941), 312; *Brillhart* v. *Excess Insurance Co.,* 316 U. S. 491, 494.

from his erroneous belief as to his rights under state or federal law. *Great Lakes Co.* v. *Huffman,* 319 U. S. 293, 300. Cf. *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101, 105; *Spector Motor Service* v. *O'Connor,* 340 U. S. 602, 605. It is a matter of discretion with federal courts.

The use of this new method of settlement was illustrated a few years ago in an important case dealing with the jurisdiction of the National Railroad Adjustment Board.[2] That case involved a disagreement between two divisions of the National Railroad Adjustment Board as to which division had jurisdiction of disputes involving yardmasters. We held that the settlement of such a jurisdictional dispute concerning an administrative agency was a proper subject for a declaratory judgment where the controversy resulted in a complete stalemate. Here, the record does not show any unusual danger of loss or damage to respondent, a suit had already been filed and the record shows no reason why its result would not settle this controversy. Because of these circumstances, I concur with the reversal of the judgment.

MR. JUSTICE DOUGLAS, dissenting.

Respondents hold a certificate of public convenience and necessity from the Interstate Commerce Commission for the transportation of motion picture films and newsreels from Salt Lake City, Utah, to points in Utah, Idaho, and Montana. Their transportation to Utah points is interstate commerce according to the Court of Appeals; and with that conclusion I agree since the movement in Utah is part of a continuing interstate stream. The threat of interference with that interstate activity by the Utah Public Service Commission is clear and immediate. *First.* The Utah Commission brought suit to enjoin those interstate activities and that suit is now pending

---

[2] *Order of Conductors* v. *Swan,* 329 U. S. 520.

in the Utah court. *Second.* The Commission's answer in the District Court denied that it was interfering with interstate commerce, not because it did not intend to prevent respondent from operating, but on the ground that the operations were deemed to be intrastate commerce and therefore subject to its regulation. Similarly, the District Court's finding that there was no interference with interstate commerce was based on an acceptance of the Commission's contentions as to the nature of respondent's business. *Third.* In their brief here petitioners assert that the Utah Commission *"will prevent the respondent from conducting"* this business *"unless and until he is authorized to do so by appropriate administrative order"* of the Utah Commission, since in the Commission's view the transportation is in intrastate commerce.

That for me is threat enough. Moreover, Utah is not attempting to regulate a phase of interstate business that is within the reach of a State's police power. She is endeavoring to make respondent obtain a permit to do an *interstate* business for which the respondent already holds a federal permit, under threat that unless he obtains a Utah permit, Utah will stop him from conducting the *interstate* business. That is an attempt to regulate in a field pre-empted by the Congress under the Motor Carrier Act (49 U. S. C. §§ 301 *et seq.*). That kind of regulation is precluded by our decision in *Buck* v. *Kuykendall,* 267 U. S. 307.

Thus the controversy is definite and concrete and involves legal interests of adverse parties. The test laid down for declaratory judgments by *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, is thus satisfied. I have said enough to show that the judges who heard this case below knew that they were dealing with a live, active contest that threatened serious consequences to respondent, not

with a hypothetical question that might have practical repercussions only in the remote future.

The fact that the Utah court can adjudicate the controversy in the pending state case is no reason why the federal court should stay its hand. There is no federal policy indicating that this is a field in which federal courts should be reluctant to intervene. That was the case in *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, where we held that declaratory relief that a state tax was unconstitutional should be denied by the federal court. The basis of our ruling was that since Congress had prohibited the federal courts from enjoining state taxes where an adequate remedy was available in the state courts (cf. *Hillsborough* v. *Cromwell,* 326 U. S. 620, 623), declaratory relief should also be withheld. Congress here has given no indication that the integrity of permits granted interstate carriers by the Interstate Commerce Commission should be protected in the state rather than in the federal courts. All the presumptions are contrary. The basis of the jurisdiction of the District Court created by Congress is clear. The case "arises under the Constitution" and "laws" of the United States. 28 U. S. C. § 1331. It is proper that the federal court, absent such special circumstances as the *Huffman* case presented, exercise that jurisdiction and protect the federal right.

The failure to do it here relegates the declaratory judgment to a low estate.