**Charlene MITCHELL et al., Plaintiffs,**

**v.**

**Joseph L. DONOVAN et al., Defendants.**

**No. 3–68–Civ–256.**

United States District Court
D. Minnesota,
Third Division.

July 14, 1969.

**1146**

Lynn S. Castner, Minneapolis, Minn., for plaintiffs.

Douglas M. Head, Atty. Gen., Richard H. Kyle, Sol. Gen., and David J. Byron, Special Asst. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

Before BLACKMUN, Circuit Judge, DEVITT, Chief District Judge, and NEVILLE, District Judge.

DEVITT, Chief District Judge.

We concern ourselves here with the propriety of entertaining that portion of plaintiffs' complaint seeking declaratory relief based on issues arising from the conduct of the 1968 Presidential Election in Minnesota as it pertained to candidates running under the banner of the Communist Party. Defendants move for dismissal, asserting mootness.

This action, for injunctive and declaratory relief, was commenced in September, 1968 by Charlene Mitchell, the Presidential candidate of the Communist Party, and others,[1] against Secretary of State Donovan and Attorney General Head, of the State of Minnesota. The plaintiffs sought an order requiring Secretary Donovan to place the names and party designation of the Communist Party candidates for President and Vice-President of the United States on the ballot for the general election of November 5, 1968. Additionally, the plaintiffs sought a declaration that the Communist Control Act of 1954, 50 U.S.C.A. §§ 841 and 842, the purported authority for the defendants' refusal to accept plaintiffs' nominating petition, is inapplicable to the present situation, or in the alternative, is constitutionally invalid.

In response to the original complaint, probable jurisdiction was noted, 28 U.S. C.A. § 1343, and a statutory three-judge court was convened, 28 U.S.C.A. §§ 2282, 2284, to consider further the issues raised by the pleadings. After oral arguments, and study of briefs from the parties and the United States Attorney as *amicus curiae*, the court, in a memorandum opinion and order dated October 2, 1968, granted temporary relief in the form of an order directing defendant Donovan, as Secretary of State of Minnesota, to accept for filing the nominating petition of plaintiffs, and upon a finding that the petition complied in all respects with the pertinent Minnesota statutes, to place the names of plaintiffs Mitchell and Zagarell, as Presidential and Vice-Presidential candidates of the Communist Party of the United States on the ballot for the November 5, 1968 general election. That Memorandum and Order, containing a more detailed exposition of facts and reasoning, is reported as Mitchell v. Donovan, 290 F.Supp. 642 (D. Minn.1968).

By affidavit with attached exhibits, it appears that defendant Donovan complied with the order of this court, and that the November 5, 1968 general election ballot contained the names "Mitchell and Zagarell" with the subdesignation "Communist Party USA/Nominated by Petition."[2]

On October 10, 1968, the plaintiffs moved to amend their complaint by adding allegations that the Communist Party plans to participate in Minnesota

---

1. The other plaintiffs are: the Vice-presidential candidate of the Communist Party, the Communist Party of the United States, the Communist Party of Minnesota, ten nominated candidates for the office of presidential elector, two petitioners for such nominations, and an eligible voter of the State of Minnesota.

2. The plaintiff Mitchell and her running mate tallied 415 votes of 1,606,307 ballots cast.

local, state, and national elections which occur after November 5, 1968, and that upon "information and belief," it appears that Attorney General Head will continue to advise Minnesota election officials that the Communist Control Act of 1954, 50 U.S.C.A. §§ 841, 842 bars the Communist Party or any candidates running under its express endorsement from participating in any and all Minnesota elections.

One week after the November 5, 1968 general election the defendants moved to dismiss the complaint on the ground that "the issues involved in this litigation have become moot and that there is no longer any justiciable issue to be tried before this court."

■ In our view the issues raised by the original pleadings are now moot since the plaintiffs' nominating petitions were accepted and their names and their party designation were placed on the ballot for the 1968 Presidential elections.

By their tendered amendment to the complaint, plaintiffs seek to have us rule for the future on the constitutionality of the Communist Control Act of 1954, 50 U.S.C.A. §§ 841, 842, on the theory that Communist Party candidates may seek some position on a Minnesota ballot in some future election and that the person who is Attorney General of Minnesota at that time may take a position that the provisions of the Communist Control Act of 1954 prevent such filing.

We readily allow the motion to amend the complaint, yet view the issues thus shaped as inappropriate for adjudication and dismiss the complaint because, in our view, such issues do not present a "controversy" as required by the United States Constitution, Article III, and the express language of the Declaratory Judgment Act, 28 U.S.C.A. § 2201.[3]

■ It is fundamental that the Declaratory Judgment Act provided a judicial remedy, but did not repeal the cardinal standard of federal jurisdiction that a federal court may not decide what is not a "case or controversy." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In *Maryland Casualty*, the Court said:

> "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 312 U.S. at 273, 61 S.Ct., at 512.

That constitutional hurdle demanding the existence of an actual case or controversy was in no sense abated by the Declaratory Judgment Act. In fact, the course of a federal litigant seeking declaratory relief is in a sense the more exacting, for,

> "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L. Ed.2d 604 (1962).

Put in another way, the Declaratory Judgment Act,

> "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."

---

3. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall be reviewable as such."

Public Ser. Comm'n. of Utah of Wycoff Co., 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952).

Here are guideposts which the United States Supreme Court has set as to when declaratory relief should be granted.

"(W)hen all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it is designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary in the type of litigation we have here where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be 'ripe for determination' as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Public Ser. Comm'n. of Utah v. Wycoff Co., *supra*, 344 U.S. at 243–244, 73 S.Ct., at 240.[4]

■ Applying these principles to this case, it appears to us that no issue is here ripe for decision; that a disagreement, if it exists between the litigants, is nebulous and conjectural, not fixed and final in shape; and that no useful purpose would be served by a declaration of rights.

It is not at all certain that candidates will seek to run on the Communist Party Ticket at the next or at subsequent elections, albeit the affidavit of Mrs. Betty M. Smith, the State Secretary of the Minnesota Communist Party, alleges such future intention. From 1949 to 1968, no person sought to run on the Communist ticket in Minnesota for any public office. Of course, it is certain that future elections will be staged in Minnesota, but the bare certainty that future elections will be held is not enough. Fair v. Dekle, 367 F.2d 377 (5th Cir. 1966), cert. den. 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed.2d 344.

But even assuming that some candidate were to run for some office under the label of the Communist Party at some future election, it is not certain that at such future election the then Attorney General of Minnesota will be the same person who now holds that office or, if so, that he will take the same legal position that was taken by the Minnesota Attorney General in connection with the 1968 election. The present Minnesota Attorney General has not said he will view the Communist Control Act of 1954 as prohibiting persons from seeking ballot positions in future elections. In view of the now expressed opinion of the legal officers of the United States Government that the Communist Control Act of 1954 does not apply to the plain-

---

4. Chief Justice Hughes expressed similar principles many years before in Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) as follows:

"The Constitution limits the exercise of the judicial power to 'cases' and 'controversies.' The term "controversies," if distinguishable at all from "cases," is so in that it is less comprehensive than the latter, and includes only suits of a civil nature.' (citations omitted) * * *

"A 'controversy' in this sense must be one that is appropriate for judicial de-termination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 300 U.S. at 239–241, 57 S.Ct., at 463–464.

tiffs, it is doubtful if the Attorney General of Minnesota will presume to take a contrary position involving the interpretation of this federal statute at a future election.

The plaintiffs cite several decisions involving voting rights cases, particularly some just decided or now pending in the United States Supreme Court[5] as authority for the proposition that this court should entertain and adjudicate this case. In each of the cited cases, however, the plaintiffs were suffering under an adverse lower court ruling, the appeals were all perfected prior to the November 5, 1968 election, the issues were fixed and final in shape, and most important of all, these cases involve firmly-imbedded state policies concerning election rights as expressed in the statutes of the States involved.

There is no firmly-imbedded state policy in Minnesota as expressed by statute or otherwise at issue here, but only the possibility of a future adverse legal opinion by a then Attorney General of Minnesota on an uncertain issue as yet unformed. The statute involved is a federal, not a state, one. As noted, the view of the chief legal officer of the United States, speaking through his United States Attorney, is that the constitutionality of the Communist Control Act of 1954 is not involved and, in his view, the statute by its application does not prohibit the plaintiffs from the positions on the ballot which they sought.

So, in summary,

1. The issue as originally framed is moot because the election is over and plaintiffs were on the ballot as requested.

2. As to the future, there is no certainty or finality as to the issues sought to be adjudicated because there is no certainty as to whether any future candidates for office in a Minnesota election may seek to run under the banner of the Communist Party and if they do, that the issues formed by their attempted filing may be the same as they are in this lawsuit. Further, there is no certainty that the issues sought to be adjudicated in the present lawsuit will be similarly viewed by the Attorney General of Minnesota holding office at the time of a future election. The issues as raised by the pleadings do not represent any fixed or firm state policy governing elections which should be examined. In our view, therefore, the issues upon which decision is requested here, are nebulous and contingent—not fixed and final—as required by the Supreme Court.

3. At all events, no constitutional issue has been definitely joined in the present lawsuit because the United States Attorney General, charged with the duty of defending the constitutionality of the statutes of the United States, expressed the view that no constitutional issue was present and agreed with the plaintiffs that a proper interpretation of the law is that the plaintiffs were entitled to be placed on the ballot at the 1968 election as they requested. The United States Attorney General agrees with the plaintiffs' view of the law; the Minnesota Attorney General, by his motion for dismissal, does not care to contest the issue. In such a stance, who is there to oppose the plaintiffs?

4. No useful purpose would be served by a declaration of rights.

In the words of Justice Brennan, in a most recent decision of the United States Supreme Court, the constitutional question, if one exists,

" * * * must be presented in the context of a specific live grievance." Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

And, as the United States Supreme Court said in United Public Workers of Amer.

---

5. See e. g., Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (May 5, 1969); Hadnott v. Amos, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969); Allen v. State Board of Electors, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); Brockington v. Rhodes, probable jurisdiction noted, 393 U.S. 1078, 89 S.Ct. 877, 21 L.Ed.2d 771 (1969).

(CIO) v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947):

> "The power of courts * * * to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough." 330 U.S. at 89–90, 67 S.Ct., at 564.

All the plaintiffs assert here is a "hypothetical threat" of a possible constitutional issue as yet unframed.

There is no "actual controversy" as is required by the Constitution, by a long line of Supreme Court decisions, and by the express wording of the Declaratory Judgment Act.

The complaint is therefore

Dismissed.