John DOE and Jane Doe, Jane E. Hodgson, M.D. et al., Plaintiffs,

v.

William RANDALL, Ramsey County Attorney, and Douglas Head, Attorney General of Minnesota, and Harold LeVander, Governor of Minnesota, Defendants.

No. 3–70–Civ–97.

United States District Court,
D. Minnesota,
Third Division.

May 19, 1970.

Rehearing Denied July 1, 1970.

Stewart R. Perry, Minneapolis, Minn., for plaintiffs.

William Randall, pro se.

John Kenefick, Asst. Atty. Gen., St. Paul, Minn., for Douglas Head and Harold LeVander.

Lawrence J. Hayes, Louis Brenner, and Daniel D. Wozniak, St. Paul, Minn., for petitioning interveners.

Before VOGEL, Senior Circuit Judge, DEVITT, Chief District Judge, and NEVILLE, District Judge.

## ORDER OF DISMISSAL

DEVITT, Chief Judge.

In this action for a declaration of unconstitutionality of the Minnesota Anti-Abortion Statutes, M.S.A. §§ 617.18 and 617.19, and for an injunction against their enforcement, the defendants move for dismissal.

Plaintiff Jane E. Hodgson, a medical doctor, performed an abortion upon plaintiff Jane Doe (a fictitious name), then about 12 weeks pregnant, in St. Paul, Minnesota on April 29, 1970.[1] It is alleged that Jane Doe was exposed to rubella (German measles) during pregnancy, and that such exposure created a substantial probability of foetal deformity to the expected child.

Minnesota law makes it a crime to occasion an abortion or to submit to an abortion except it be necessary to preserve the life of the mother or child. M.S.A. §§ 617.18, 617.19.

Plaintiff John Doe (a fictitious name) is the husband of Jane Doe. The other three plaintiffs are medical doctors.

Defendant William Randall is the State prosecuting officer of Ramsey County, within which the City of St. Paul is located. It is his duty to prosecute violations of the state criminal laws. The Governor and Attorney General of Minnesota are also named defendants.

Four medical doctors practicing their profession in Minnesota, Fred E. Mecklenburg, Paul H. Andreini, Alex Barno and John McKelvey, seek to intervene in support of the constitutionality of the Anti-Abortion statutes.

Several motions pend. We first consider defendants' motion to dismiss.

Two major objections are urged by the State of Minnesota and its officers to our entertaining this action. First, it is urged that it is improper for the Federal Court to act in this state criminal matter, and that we should therefore apply the doctrine of abstention. Secondly, it is urged that there is an absence of the required "case or controversy" under the United States Constitution and of a "justiciable controversy," under the Declaratory Judgments Law.

Federal policy is opposed to Federal intervention in State affairs. The Congress has expressly prohibited the issuance of an injunction, "to stay proceedings in a State court." 28 U.S.C.A. § 2283. This has been the statutory law of the United States since 1793. (Act of March 2, 1793, Chaper 22, Sec. 5, also found in 1 Stat. 334.)

While this Anti-Injunction Statute does not prohibit an injunction against a state officer who is about to institute criminal proceedings to enforce an unconstitutional statute where a "chilling effect" upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure," Dombrowski v. Pfister, 380 U.S. 479 at 487, 85 S.Ct. 1116 at 1121, 14 L.Ed.2d 22, 1965, it is clear that no such "chilling effect" under the First Amendment is present in this type of action. That was the holding of the United States District Court for the Eastern District of Wisconsin in the case of Babbitz v. McCann, 310 F.Supp. 293, filed on March 5, 1970. That court refused to issue an injunction.

---

1. This appears from an amended and supplemental complaint of plaintiffs. The Court allows its filing. The original complaint, challenging the unconstitutionality of the Anti-Abortion Statutes, was filed on April 16, 1970, before the abortion was performed.

■ There has been a consistent and traditional reluctance by the Federal Courts to interfere in State criminal proceedings as is amply reflected in a long line of Supreme Court decisions. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Pugach v. Dollinger, 1961, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678; Cleary v. Bolger, 1963, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed. 2d 390. See also numerous cases cited in 1 Barron and Holtzoff (Wright Ed.), Section 46 at n. 96.

■ In the most recent expression on the subject, the United States Supreme Court, in *Dombrowski, supra,* said:

"The Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

The same principle was expressed earlier by the High Court in a decision written by Mr. Justice Whittaker, Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620 (1961), also involving a requested injunction against a suggested State prosecution under the State criminal laws.

■ The Court there said:

"We live in the jurisdiction of two sovereigns. Each has its own system of courts to interpret and enforce its laws, although in common territory. These courts could not perform their respective functions without embarrassing conflicts unless rules were adopted to avoid them. Such rules have been adopted. * * * Federal courts should not exercise their discretionary power 'to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for

the interposition of a court of equity to prevent irreparable injury which is clear and imminent.' " Douglas v. City of Jeannette, supra, 319 U.S. [157] at page 163, 63 S.Ct. [877] at page 881, [87 L.Ed. 1324].

■ The exception here noted, to "prevent irreparable injury" is not present in a case such as this, according to the *Dombrowski* Court, as quoted supra.

■ The second suggested objection to the maintenance of this action under the Federal Declaratory Judgments Law is the absence of a "case or controversy" as that term is used in the United States Constitution, Article III, Section 2, or of a "justiciable controversy" as both of those terms have been defined by numerous decisions of the United States Supreme Court. See particularly Public Service Commission of Utah v. Wycoff Company, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), and United Public Workers of America v. Mitchell (CIO), 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

■ We fully subscribe to this suggested infirmity in plaintiffs' asserting their claims here. In addition, the Declaratory Judgments Act specifically requires an "actual controversy," 28 U.S.C. A. § 2201. Also, the discretionary authority of the Court to entertain an action is implicit in the use of the word "may." See Mitchell v. Donovan, D.C., 300 F.Supp. 1145 at p. 1147, 1148, argued and awaiting decision in the United States Supreme Court, for a fuller exposition of our views.

It will be recalled that in all the recent cases from other jurisdictions involving the constitutionality of Abortion Statutes, to wit, in California, People v. Belous, Cal., 80 Cal.Rptr. 354, 458 P.2d 194; in Wisconsin, Babbitz v. McCann (E.D.Wis.) filed March 5, 1970; in the District of Columbia, United States v. Vuitch, 305 F.Supp. 1032 (1969); in Massachusetts, Commonwealth v. Brunelle, Sup. Court #83879; and in South Dakota, State v. Munson, unreported, 4/10/70; there was an actual "case or controversy," and a "justicable controver-

**36**

sy," clearly presented by the return of an indictment. Such is not the case here. No indictment has been returned.

It is also noteworthy that all of these cases were decided by the State Courts except Babbitz v. McCann, and there the Federal Court refused to enjoin a state criminal prosecution.

■ It appears that the plaintiffs' counsel is seeking relief for his client in the wrong court. Involved is a state statute, a state Governor, a state Attorney General, a state prosecutor, and a state policy of law enforcement upon which the federal courts may not with impunity impinge.

There are highly competent state judges fully qualified and available to pass on this state-oriented issue, and each of those judges is as fully committed as we to upholding the United States Constitution.

There is an adequate state statute, the Declaratory Judgments Act, M.S.A. § 555.01 et seq. under which the plaintiffs may obtain the requested relief and the decision thereon will "have the force and effect of a final judgment."·

Thus adequate relief is available to plaintiffs either through the State Declaratory Judgments Act or through the State Courts in a criminal prosecution if one is instituted. We have every confidence that plaintiffs' constitutional claims will be fully and fairly considered and decided by the state courts.

We are satisfied that the Federal court should not assert jurisdiction either to make a declaration as to the constitutionality of the Minnesota Statutes or to enjoin possible state criminal prosecution under them.

The complaint is dismissed.

VOGEL, Senior Circuit Judge, dissents.

NEVILLE, District Judge (concurring in result).

I concur in the result because I believe there is no "case or controversy" within Article III § 2 of the United States Constitution, nor is there an "actual controversy" under 28 U.S.C. § 2201, the declaratory judgment statute. Insofar as the majority opinion is bottomed on the doctrine of "absention", however, I hesitate to agree. Had the abortion not been performed, the question would not have become moot and thus a justiciable controversy would exist. I would under those circumstances hold that under the philosophy and teachings of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and other cases, the doctrine of abstention should not serve as a bar, and the court had ought to take jurisdiction of the cause. In the present posture of the case, however, we are in reality asked to do nothing but render an advisory opinion. The exigency has disappeared and the irreparable harm contemplated, if such it be, has gone.

Once a state criminal prosection is commenced, it may or may not be that 28 U.S.C. § 2283 will prohibit federal interference with prosecutions brought under state criminal laws. Prior to any such prosecution, however, I subscribe to the view that the entire medical profession and innumerable pregnant women live under the sword of Damocles. The exercise of their best medical judgment, the giving of advice and the pregnants' freedom of choice is "chilled" by the cloud of a statute which renders their actions illegal and puts them in jeopardy of criminal prosecution with the resultant publicity, possible public disgrace, loss of hospital privileges, threat of license revocation, etc. The constitutionality of the statutes was properly brought into the federal forum for a determination, but now I agree must be dismissed but only for lack of a justiciable controversy.

ON PETITION FOR REHEARING

PER CURIAM.

We dismissed this case on May 19, 1970.

Plaintiffs petition for rehearing.

■ It is made to appear, by affidavit of plaintiffs' counsel, that a state court indictment has now been returned against plaintiff Jane E. Hodgson charg-

ing a violation of the Anti-Abortion Law. It is urged that these changed circumstances merit the granting of a rehearing.

We believe it inappropriate to grant a petition for rehearing upon events which have transpired since dismissal of the action. It well may be that the return of the indictment will support a new and different cause of action, but it does not furnish the basis for a rehearing of the action previously dismissed.

But regardless of this, we do not believe we should grant the rehearing. It appears that, as the result of the return of the indictment, the constitutionality of the Minnesota Anti-Abortion Law now has been put in issue before the Ramsey County State District Court. Arguments have been made and the issue awaits decision. An appeal to the Minnesota Supreme Court is contemplated.

The law specially prohibits our issuing an injunction in these circumstances, 28 U.S.C. § 2283; and this prohibition cannot be avoided by the grant of a declaratory judgment because the same principles of comity and federalism pertain. Brooks v. Briley, 274 F. Supp. 538, 553 (M.D.Tenn.1967) (a decision of a three-judge court), aff'd per curiam, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968). See also McLucas v. Palmer, 427 F.2d 239 (2d Cir. 1970).

The United States Supreme Court has counselled us that—

"Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court."

Atlantic Coast Line RR Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

This very recent decision re-emphasizes the settled federal practice of maintaining a hands-off policy as to pending state court proceedings.

The petition for rehearing is Denied.

VOGEL, Senior Circuit Judge (concurring separately):

I agree with the court's present opinion. I am, however, compelled to add a word to make clear my prior dissent when this case was dismissed. Once an indictment is returned, I feel the statutory mandate of 28 U.S.C.A. § 2283 and the principles of comity require a federal court to abstain. A court of competent jurisdiction then has control of the controversy. In such cases, I believe our jurisdiction is limited only to bad faith prosecutions directly affecting the exercise of First Amendment freedoms. Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182; Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. The recent pronouncement of the Supreme Court lends credence to this view. See Atlantic Coastline R. Co. v. Brotherhood of Locomotive Engineers, No. 477, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234, 1970. Moreover, as a practical matter, once a state court has taken jurisdiction of a constitutional issue fully litigated before it, I have grave doubts that a Three-Judge Court may ever take the case without forcing plaintiff to waive his constitutional claims in the state courts. See England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

Prior to indictment, however, I believe the federal court is allotted more leeway to intervene. So long as the plaintiff alleges violations of federal rights coupled with irreparable harm, I see no reason to stay our hand when the state law is clear and unambiguous. See Harmon v. Forssenius, 1965, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50; Davis v. Mann, 1964, 377 U.S. 678, 690, 84 S.Ct. 1441, 12 L.Ed.2d 609; United Steel Workers of America (A.F.L.-C.I.O.) v. Bagwell, 4 Cir., 1967, 383 F.2d 492, 495.

With these reservations and explanations, I fully concur in the present result.