**FIRST NATIONAL BANK OF MONROE, a National Association, Plaintiff,**

v.

**HARRIS TRUST & SAVINGS BANK, an Illinois Banking Corporation, and Bruce M. Roethke, Defendants.**

No. 86–C–694–S.

United States District Court, W.D. Wisconsin.

Jan. 7, 1987.

Paul T. Fox, Holleb & Coff, Chicago, Ill., Rudolph F. Regez, Regez, Callahan & Voegeli, Monroe, Wis., for plaintiff.

John O. Collen, Chapman & Cutler, Chicago, Ill., Stephen L. Castner, Houseman, Feind & Castner, Grafton, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff First National Bank of Monroe (FNB), a bank with its principal place of business in Monroe, Wisconsin, has brought this action against Bruce Roethke, a Wisconsin resident and loan officer at plaintiff Bank, and Harris Trust & Savings Bank (Harris), an Illinois banking corporation, in Green County Circuit Court. The defendant Harris Trust & Savings Bank has removed the case to this Court. The case is currently before this Court on plaintiff's motion to remand the case to state court.

### FACTS

The facts of this case as stated in plaintiff's complaint are as follows.

Plaintiff First National Bank of Monroe had a commercial lending relationship with Crandall, Inc., a business engaged in selling automotive parts and services. Defendant Bruce Roethke was the loan officer for the Crandall loan accounts.

In early 1984, Crandall approached FNB regarding a loan to purchase a tire company and other additional financing totaling $1.3 million. However, the $1.3 million sought by Crandall exceeded the amount FNB could lawfully lend to Crandall in light of Crandall's existing debt to FNB, pursuant to the federal lending limits set forth in 12 U.S.C. § 84 and regulations promulgated by the Comptroller of the Currency.

Because of Monroe's inability to lend Crandall the amount it sought, Monroe contacted defendant Harris Trust & Savings Bank with respect to Harris participating in a $1.3 million loan to Crandall. Harris agreed to be a 100 percent participant in the loan and provide the full $1.3 million needed by Crandall.

To secure all FNB loans, including the participated loan, Crandall executed a security agreement granting FNB a security interest in certain collateral, which did not include any real estate. As a result of the security agreement, the collateral for the participated loan was an undivided percentage interest in property covered by the security agreement and equal to the amount of the participated loan as a percentage of Crandall's total obligations to FNB.

In conjunction with the participated loan, FNB and Harris entered into a participation certificate and agreement which set out the respective rights and obligations of FNB and Harris relating to the participated loan. Also in connection with the participated loan, Roethke executed a document titled "Supplement to Participation Certificate" prepared by Harris.

On or about July 15, 1985, FNB received a mortgage in certain real property from Vera Crandall for all existing obligations of Crandall to FNB. The mortgage was not intended to secure the participated loan.

During August and September 1985, FNB extended the terms of existing loans to Crandall in reliance upon the security it held, including the security it shared with Harris and the collateral it held alone. The extensions of credit totaled $900,000.

On November 26, 1985, Crandall filed a bankruptcy petition. Since the time of the bankruptcy filing, Harris has taken the position that the Supplement gives first priority as to all collateral of Crandall held by FNB. Harris has taken the position that it

is not obligated to share pro rata in proceeds of collateral securing all FNB loans to Crandall, including the participated loan. Harris has also taken the position that the Supplement entitled it to all proceeds of collateral which was never intended to secure the participated loan, such as the mortgage. The Bankruptcy Court has entered an order permitting Harris and FNB, acting together and without deciding the rights between the parties, to proceed to liquidate certain collateral and to collect proceeds of that collateral. Those proceeds have been deposited into an escrow held in trust at FNB pursuant to an agreement between the parties.

On September 4, 1986, FNB brought this action against Harris and Roethke in the Circuit Court for Green County, Wisconsin. In its complaint, plaintiff FNB sets forth eight claims for relief. In its first claim for relief, plaintiff asks the Court to declare the meaning and effect of the Supplement. Specifically, plaintiff asks the Court to declare that the Supplement does not change the participation certificate's terms providing for a pro rata distribution of all collections and proceeds of collateral. In its second claim for relief, plaintiff contends that if Harris' interpretation of the Supplement is correct, then Harris used fraud in getting Roethke to execute the Supplement. In its third claim for relief, plaintiff asks the Court to declare the Supplement void because if Harris' interpretation of the Supplement is correct, the Supplement has caused FNB to exceed its federal lending limits. In its fourth claim for relief, plaintiff asks the Court to declare the Supplement void because if Harris' interpretation of the Supplement is correct, the Supplement has defeated the essential purpose of the participated loan. In its fifth claim for relief, plaintiff asks the Court to declare the Supplement void for lack of consideration. In its sixth claim for relief, plaintiff alleges that Roethke breached his fiduciary duty to FNB by signing the Supplement without reading and understanding it and without seeking and receiving express authorization to sign the Supplement from FNB. In its seventh claim for relief, plaintiff alleges that Roethke breached his employment contract by failing to exercise care and prudence in carrying out his duties and by failing to comply with all applicable FNB loan policies and procedures with regard to the Supplement. In its eighth and final claim for relief, plaintiff alleges that Roethke acted negligently in executing the Supplement.

On September 22, 1986, defendant Harris removed the case to this Court, pursuant to 28 U.S.C. §§ 1441(c), 1441(b), and 1452(a). Plaintiff has moved the Court to remand the case to state court.

## OPINION

Defendant Harris has removed the case to this Court based upon 28 U.S.C. §§ 1441(c), 1441(b), and 1452(a). This Court will examine whether removal is proper under any of these provisions.

Section 1441(c) provides that:

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The issue in this case is whether the claims against Harris, which would be removable based upon diversity jurisdiction, are "separate and independent" from the claims against Roethke, which would not be removable for non-diversity reasons.

The Seventh Circuit, when construing 28 U.S.C. § 1441(c), stated that "claims are not 'separate and independent' if the wrongs arise from an interlocked series of transactions, i.e., they substantially derive from the same facts." *Lewis v. Louisville & Nashville Railroad*, 758 F.2d 219, 221 (7th Cir.1985). In support of this statement, the Seventh Circuit cited the Supreme Court case of *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

In *Finn*, plaintiff, a Texas citizen, brought suit for a fire loss in Texas state

court against two out-of-state insurance companies and their local agent, Reiss. Plaintiff claimed that either she held a valid policy for fire loss from one of the insurance companies or, alternatively, that Reiss was liable for negligently failing to secure fire insurance for her. *Id.* at 14–16, 71 S.Ct. at 540–41. The two insurance companies removed the case to federal court and the plaintiff's motion for a remand was denied.

The Supreme Court, however, held that the district court did not have diversity jurisdiction over the case and should have remanded it because Reiss and Finn were both Texas citizens. The Court, in rejecting the insurance companies' argument that the removal was proper under 28 U.S.C. § 1441(c) because Finn's claims against them were "separate and independent" from her claims against Reiss, stated:

> [W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).
>
> \* \* \* \* \* \*
>
> [T]he damage comes from a single incident. The allegations in which Reiss is a defendant involve substantially the same facts and transactions as do the allegations in the first portion of the complaint against the foreign insurance companies. It cannot be said that there are separate and independent claims for relief as § 1441(c) requires. Therefore, we conclude there was no right to removal.

*Id.* at 14, 16, 71 S.Ct. at 540, 541.

This Court believes that the Supreme Court's decision in *Finn* requires this Court to find that the claims against Harris are not separate and independent from the claims against Roethke. FNB, just like the plaintiff in Finn, seeks relief against a foreign corporation arising out of a contract dispute and, in the alternative, against a local individual for breach of duty in con-

nection with the formation of the contract. The claims against both defendants arise out of the execution of the Supplement to the Participation Agreement, a single incident. Accordingly, this Court holds that removal is not proper under 28 U.S.C. § 1441(c).

█ Defendant Harris also contends that removal to this Court is proper based upon 28 U.S.C. § 1441(b). Section 1441(b) provides that:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties....

The issue with regard to § 1441(b) is whether plaintiff's complaint raises federal questions.

Plaintiff's complaint primarily seeks declaratory relief against Harris. In determining whether federal question jurisdiction exists over a declaratory judgment action brought in state court and removed to federal court, the Supreme Court held that the Court's decision in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) should control. *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). As the Supreme Court explained in *Franchise Tax Board*, "*Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.' [citations omitted]." *Id.* 463 U.S. at 16, 103 S.Ct. at 2850.

In support of its holding in *Franchise Tax Board*, the Supreme Court quoted approvingly from its opinion in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952):

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Franchise Tax Board,* 463 U.S. at 16–17 n. 14, 103 S.Ct. at 2850 n. 14.

Based upon the Court's reasoning in *Franchise Tax Board,* this Court believes that this Court does not have federal question jurisdiction over this action. Before FNB began this action, Harris demanded that FNB turn over all the proceeds of collateral pledged by Crandall to Harris, and threatened litigation if FNB did not comply. Harris stated in its Petition to Remove that "[o]n its face, the Supplement ... entitles Harris to first recovery of collateral pledged by Crandall ... in exchange for Harris's 100% participation in $1.3 million loan to Crandall."

If Harris had sued, Harris' suit would have involved a state law contract claim based upon the Supplement. The defenses FNB would have raised to such a suit are the same claims that FNB raised in its complaint for declaratory judgment. These defenses include the defense that the Supplement is void because it caused FNB to exceed its federal lending limits. Since this federal question would arise only as a de-

fense, it is not properly the basis for the exercise of federal question jurisdiction. Removal is not proper under 28 U.S.C. § 1441(b).

■ Defendant Harris also contends that removal to this Court is proper based upon 28 U.S.C. § 1452. Section 1452 provides in part that:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Section 1334 governs bankruptcy cases and proceedings.

Harris contends that this case is removable under 28 U.S.C. § 1334 and 1452 because it involves a dispute between two creditors of a debtor in bankruptcy. This argument, however, was expressly rejected in *In re Xonics, Inc.,* 61 B.R. 818 (N.D.Ill. 1986). That case, like this one, involved a dispute over which creditor had priority to the proceeds of collateral in which the debtor no longer had an interest.

In holding that it did not have jurisdiction, the *Xonics* Court reasoned, "[i]n order for a matter to be considered as related, it must be connected to the administration of the Title 11 case ... There must be some reason why adjudication of the claim is better placed with the bankruptcy court as opposed to a state court." *Id.* at 821. The Court concluded that since the debtor's reorganization could be accomplished without resolution of the dispute between the two creditors and that since the outcome of that dispute would not affect the administration of the bankruptcy proceeding, the creditor's dispute was not "related to" a bankruptcy proceeding and therefore there was no federal jurisdiction over it.

**1582**

For the same reasons, this Court believes that it does not have jurisdiction over this action pursuant to 28 U.S.C. §§ 1334 and 1452. The resolution of the dispute between Harris and FNB will not affect the Crandall bankruptcy proceeding and therefore the case is not "related to" a bankruptcy proceeding.

Since this Court has concluded that removal was not proper pursuant to 28 U.S.C. §§ 1441(c), 1441(b) or 1452(a), plaintiff's motion to remand this case to state court is granted. This Court will not reach defendant Harris' motion to dismiss.

### ORDER

IT IS ORDERED that the plaintiff's motion to remand this case to state court is GRANTED.