**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Plaintiff,**

v.

**STATE OF NEW HAMPSHIRE and State of New Hampshire Public Utilities Commission, Defendants.**

Bankruptcy No. 88-00043.
Adv. No. 89-08.

United States Bankruptcy Court,
D. New Hampshire.

April 5, 1989.

See also, Bkrtcy., 99 B.R. 155.

Isaac M. Pachulski, Don Willenburg, Kevin J. Burke, for Public Service Co.

Geoffrey B. Kalmus, J. Michael Deasy, for the Unsecured Creditors Committee.

Richard Tilton, for the Equity Committee.

Larry M. Smukler, Sr. Asst. Atty. Gen., Daniel J. Callaghan, for the State of N.H.

William B. Gundling, Asst. Atty. Gen., for the State of Conn.

Susan Keely, for the U.S. trustee.

George J. Wade, Barbara J. Gould, David J. Dunfey, for Citicorp and Consol. Utilities & Communications, Inc. (CUC).

Peter V. Doyle, for First Fidelity Bank and Amoskeag Bank.

Jeffrey G. Grody, for Northeast Utilities Service Co.

Ted A. Berkowitz, for First Fidelity Bank.

Robert Drain, for Shearson, Lehman, Hutton, Inc.

Peter Nils Baylor, for Bank of New England and Maryland Nat. Bank.

David W. Marshall, for NEES.

John M. Mutkoski, for Small Power Producers and Alexandria Power Bio Energy.

Sallie H. Helm, for Spear, Leeds & Kellogg.

Noel E. Hanf, for the United Illuminating Co.

## PRETRIAL ORDER RE DECLARATORY RELIEF ON § 1123(a)(5) PREEMPTION ISSUE

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding was commenced by the filing of a Complaint for Declaratory Judgment by the chapter 11 debtor on February 7, 1989. The Declaratory relief requested concerns the jurisdiction of the New Hampshire Public Utilities Commission ("NHPUC") over certain trans-

actions provided for in the debtor's chapter 11 plan of reorganization filed with this court on December 27, 1988. The debtor notes that its plan provides for various transactions in its implementation that ordinarily would be subject to NHPUC regulatory control and approval, citing *inter alia,* New Hampshire Revised Statutes, RSA 374:30, 374:31 (transfer of franchise, works, system); RSA 369:2 (mortgaging of property); RSA 369:1, 369:7 (issuance of stock, bonds, notes and other evidences of indebtedness); and RSA 366:5 (contracts with affiliates).

The plan filed by the debtor expressly states that PSNH need not seek, and does not intend to seek, approval from NHPUC as to the foregoing transactions normally within the approval authority of that regulatory agency, based upon the confirmation standards and powers included in § 1129 of the Bankruptcy Code, together with the authorization for providing for adequate means for implementation of a reorganization plan included within § 1123(a)(5) of the Bankruptcy Code. The complaint concludes by requesting judgment by this court "declaring the rights and obligations of Public Service and the Defendants regarding the regulatory approvals of the NHPUC, if any, required for confirmation under § 1129 of the Bankruptcy Code and implementation of the Plan or of any other plan to be filed in this chapter 11 case."

The State of New Hampshire (hereinafter "State") and the NHPUC filed their answer to the declaratory judgment complaint on February 21, 1989, in which they request that the court issue judgment "declaring that § 1123 of the Bankruptcy Code does not permit a regulated electric utility debtor to disregard State and Federal regulatory law in the formation and implementation of its plan of reorganization."[1]

The debtor in a Motion for Summary Judgment [Court Paper No. 1634] has asserted that there is no genuine dispute as to any material fact and has requested summary adjudication as prayed for, as a matter of law, and states further: "Section 1123(a)(5) of the Bankruptcy Code, coupled with the grant of plenary jurisdiction of the property of the debtor and the property of the estate under 28 U.S.C. § 1334(e), vests power in this Court to confirm and implement a chapter 11 plan (and specifically the plan filed by Public Service on December 27, 1988) without compliance with otherwise applicable nonbankruptcy law restricting or conditioning the transactions contemplated under such a chapter 11 plan."

The aforesaid Motion was originally filed prior to the commencement of these adversary proceedings as a "Motion for Summary Adjudication of Preemption of State law requirements" on February 1, 1989. That Motion was denied, without prejudice to the filing of an appropriate adversary complaint, by this court's Order entered February 3, 1989. At the last pretrial conference in this adversary proceeding, the parties agreed that, if this matter is to go forward for determination, the aforesaid Motion shall be deemed to be a Motion for Summary Judgment in the adversary proceeding and will be treated as such. Likewise, the memorandum in support of the Motion [Court Paper No. 1636] will be deemed to be refiled in the adversary proceeding in support of the request for summary judgment by the plaintiff.

The court itself raised a question at a series of pretrial conferences as to the existence of an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201, which would justify declaratory relief in the circumstances. At hearings on February 22, and 28, 1989 the court directed briefing of the question by the plaintiff and defendants, and invited briefing by other interested entities concerned with these reorganization proceedings. The court then heard argument on the question at the final pretrial conference hearing held on March 31, 1989.

---

**1.** The State and NHPUC subsequently, and at the pretrial hearing, have taken the position that under the "ripeness" standard pertaining to declaratory judgments the issue presented in this adversary proceeding is not now appropriate for declaratory judgment determination in the present circumstances of this case.

The question was extensively briefed and was well-argued at the final pretrial conference. The question really breaks down into two separate questions, i.e., (1) Is there an actual controversy between the parties that satisfies Article III constitutional concerns deriving from the "case or controversy" grant of federal court jurisdiction; and (2) if an actual controversy is presented should the court as a matter of discretion entertain the request for declaratory relief in this case.

■ On the first aspect of the question, it seems clear that there is in fact an actual controversy within the contemplation of 28 U.S.C. § 2201 existing between the plaintiff and the defendants in the circumstances of this case. The debtor's filed plan of reorganization contemplates various transactions resulting in a complete restructuring of its corporate entity and changes in its operational format in a manner designed to bring the reorganized company, or some portions thereof, within the regulatory authority of the Federal Energy Regulatory Commission ("FERC") rather than the jurisdiction of NHPUC. The defendants have made it abundantly clear during throughout the fourteen months that have elapsed during this reorganization proceeding that they are adamantly opposed to any such attempt to transfer regulatory jurisdiction from state to federal control; that they do not think that it can be accomplished as a matter of law under the Bankruptcy Code; and that they will oppose any such plan in this case by all means legally available.

The only arguable issue about the existence of an actual controversy between the plaintiffs and defendants is the fact that the debtor is currently engaged in further negotiations aimed at trying to achieve a consensual plan of reorganization—including a hoped-for resolution of the dispute with the State of New Hampshire as to agreeable rate levels for the reorganized company. Under FERC standards the debtor believes it could obtain much great-er rate relief than the State currently has proposed. However, the possibility of a settlement always exists with regard to any litigated matter. That possibility alone in my judgment cannot destroy the existence of an actual controversy for declaratory judgment purposes. It is clear in the present instance that the debtor fully intends to pursue its "FERC plan" in the event that its further negotiations with the State of New Hampshire prove fruitless.

■ A more difficult aspect of the declaratory relief issue in the present case is the question of exercise of discretion to grant such relief. Is is well-established that even if an actual controversy exists a federal court is not *required* to grant such relief. *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948); *In re Combustion Equipment Associates, Inc.*, 838 F.2d 35, 37 (2nd Cir. 1988).

Arguing *against* the exercise of discretion in granting declaratory relief in the present case are the following factors: (1) Chapter 11 reorganization proceedings are intended to involve extended negotiations toward a consensual plan rather than litigation if at all possible; (2) the recent orders of this court terminating the exclusivity period of debtor's sole control over plan formulation and acceptance created a 60–day period during which multiple plans can and are being filed, together with the appointment of an examiner to serve as a mediator, which may result in a consensual plan emerging that could avoid the preemption issue; (3) preemption issues involving the supremacy clause and federal-state conflicts are issues to be treated carefully and delicately in the federal systems; and (4) there exists the mechanism of the disclosure statement and confirmation hearings in the chapter 11 plan confirmation process at which the legal question of the effect of the Bankruptcy Code provisions with regard to the State regulatory provisions can also be addressed.[2]

---

2. See case law and discussion regarding determination of issue at disclosure hearing stage in this court's "Amended Order to Show Cause Re Briefing Schedule on § 1123(a)(5) Issue" entered sua sponte on January 20, 1989 [Court Paper No. 1608].

Positive factors arguing *for* the exercise of discretion in granting declaratory relief on the preemption issue include: (1) The question is presented as a legal question only and needs no factual development other than the terms of a filed plan of reorganization; (2) Any plan of reorganization expectable in this proceeding (even without the "FERC option") will almost inevitably present the same legal question inasmuch as some transfer of properties, issuance of securities, or other transaction coming within the broad sweep of NHPUC regulatory authority, will inevitably be at least a part of the reorganization of a complex entity such as the present debtor; and (3) The debtor has a right to proceed to attempt to have its own plan of reorganization confirmed, notwithstanding the filing of other plans, and in effect will suffer the "hardship" of having its òwn plan delayed in the confirmation process if this significant and unavoidable legal issue is not addressed now rather than later. A competing plan by a creditor to have Northeast Utilities acquire the debtor and remain subject to NHPUC regulation has already been filed and others are promised.

The question on the exercise of discretion in this matter is not free from doubt. The parties supporting and opposing declaratory relief differ completely as to which decision by this court will serve to preserve the "level playing field" that this court intended by its recent orders on termination of exclusivity and appointment of an examiner. [See Court Papers Nos. 1896, 1899, 1931, and 1932] There is also the natural inclination of any court to avoid deciding a significant legal issue until it has as concrete a context for that decision as possible. There is also the time factor involved, i.e., the need for the parties to devote their full energies to the current negotiations as to the pending plans.

The present dispute is more than abstract or hypothetical. The debtor has filed a plan which clearly raises the preemption issue and that event distinguishes this case from cases in which the issue presented was determined to be contingent and hypothetical for declaratory judgment relief. See, e.g., *Aetna Life Ins. Co. v.*

*Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Public Service Commission of Utah v. Wycoff Company, Inc.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Metzenbaum v. Federal Energy Regulatory Commission,* 675 F.2d 1282 (D.C.Cir. 1982). In the present case there is no uncertainty or contingency about the dispute arising in concrete form between the plaintiff and the defendants. As indicated, the triggering event has already occurred, i.e., the filing of the debtor's plan of reorganization. In those circumstances, and since the § 1123(a)(5) issue is at the core of the debtor's plan and the state's objection thereto, this case is more akin to those cases in which declaratory relief was determined to be appropriate even though the actual terms and scope of the dispute between the parties was subject to further proceedings. See, *Shell Oil Co. v. Santa Monica,* 830 F.2d 1052, 1061–62 (9th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978).

Basically, the court must balance the "fitness" of the issues for judicial decision, as opposed to the "hardship" to the requesting party of withholding declaratory relief. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Pacific Gas and Electric Co. v. State Energy Resources Commission,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). The fitness factor is supported here by the concrete conflict between the debtor and the State, together with the inescapable preemption issue built into not only the debtor's plan but in effect inherent in the consideration of any plan regarding a regulated monopoly utility company by virtue of the ambiguity left in the statute by Congress in the enactment of the 1978 Code. *Bankruptcy Code,* §§ 1123(a)(5); 1129(a)(3) and 1129(a)(6). With regard to the hardship factor, the debtor makes a cogent argument that since the court has opened up the reorganization practice to multiple and competing plans of reorganization the debt-

or in effect will be hampered in pursuing its own "FERC plan" option if the central uncertainty in the Code is not addressed.

On balance I conclude that this court should exercise its discretion to grant the requested declaratory relief, if that request does not become moot by the achievement of a consensual plan by the parties, and that the process for the granting of that relief should commence now. If this case had proceeded with the debtor's exclusivity on plan formulation preserved, the court might well have deferred any decision on the preemption issue until the disclosure statement hearing on a plan of reorganization. However, having created a situation for multiple and competing plans of reorganization I believe it *would* be an unfair hardship upon the debtor not to address this legal question, even as plan negotiations go forward, in order that the debtor's plan may compete with the other plans on an equal basis in the march toward confirmation. As for the contention that briefing and arguing this issue will take too much time away from the negotiations toward a possible consensual plan, I believe that all interested parties must have long ago researched the preemption issue and the conversion of that research into briefs should not impose any inordinate burden on any party.

Even if a legal determination is not ultimately required by this court, the very process of briefing and hearing the matter may well be material and useful in the required disclosure materials as to any plan of reorganization that may go forward in this case, in view of the completely unique and unprecedented legal issues presented by the reorganization in chapter 11 of a regulated monopoly utility company.