Frederick County Fruit Growers' Association, Incorporated, Amicus Curiae.

No. 92–2323.

United States Court of Appeals, Fourth Circuit.

Argued March 29, 1993.

Decided June 9, 1993.

COMITE DE APOYO A LOS TRABAJADORES AGRICOLAS (CATA), Julio Aponte–Galarza, Nelson Ayala, Geraldo Camacho, William Carabillo, Santiago Castillo, Carlos Collazo–Baez, Pablo Colon–Perez, Luis A. Delgado, Luis M. Fuentes, Wilson Maldonado, Carmelo Medina, Carlos Montero, Jose L. Palau–

---

Garry G. Geffert, Migrant Legal Action Program, Inc., Washington, DC, argued (Gregory S. Schell, Florida Rural Legal Services, Inc., Belle Glade, FL, Shelley David, Farmworker Justice Fund, Inc., Washington, DC, on brief), for appellants.

John Samuel Koppel, Civil Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., Richard D. Bennett, U.S. Atty., Michael Jay Singer, Civil Div., U.S. Dept. of Justice, Washington, DC, on brief), for appellees.

Thomas E. Wilson, Christopher A. Weals, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, for amicus curiae.

Before WIDENER and WILKINSON, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

The question here is whether plaintiffs have standing to seek a declaratory judgment when the party that would be adversely affected by that judgment is not present in the case. Plaintiffs seek a declaratory judgment that the Department of Labor erred in approving wages they received for agricultural labor in 1986. The grower that employed plaintiffs in 1986 is not a party to this case; plaintiffs hope to use a declaration that their wages were impermissibly low to obtain backpay from the grower in a separate arbitration proceeding. We hold that plaintiffs do not have standing, because the grower would not be bound by a judgment rendered in its absence. Any opinion we might issue would thus be purely advisory in the arbitration proceeding. Article III forbids us to enter such a judgment.

Plaintiffs additionally seek a prospective declaration that the wage-correlation methodology which the Department of Labor devised for this case is invalid. We hold that plaintiffs lack standing to seek this relief too, because the threat that DOL will again apply the new methodology to wages earned by plaintiffs is not sufficiently "real and immediate." Accordingly, we affirm the district court's judgment of dismissal.

### I.

The United States Employment Service is a cooperative federal-state employment system established under the Wagner–Peyser Act of 1933, *codified at* 29 U.S.C. §§ 49 *et seq.* The USES helps agricultural employers in one state find agricultural workers in another state when the local labor supply is lacking. To use this service, the employer must make an offer that matches the "prevailing wages ... among similarly employed agricultural workers in the area of intended employment." 20 C.F.R. § 653.501(d)(4). This rule prevents the USES from serving as a source of cheap labor, which would depress local wages.

To determine the "prevailing wage" in an "area of intended employment," the Department of Labor applies a formula laid out in

its Employment Training Administration Handbook No. 385. First, DOL marks out areas of agricultural employment and surveys laborers in that area to see what they were paid in the previous year for harvesting a given crop. DOL then identifies the most common method of payment for the crop in question: i.e., piece rate or hourly rate. The median wage in that most common method of payment becomes the prevailing wage rate ("PWR") for the region.

Occasionally, however, a grower makes an USES offer in a different method of payment than the PWR. In the summer of 1986, two western Maryland orchards—Hepburn Orchards, Inc. and Fairview Orchards Associates—made USES offers of $3.50 per hour for "orchard work." "Orchard work" included picking apples; the PWR for apple-picking in 1985 had been a piece rate. DOL thus confronted the problem of correlating a piece rate PWR to an hourly rate USES offer.

Faced with a tight deadline, DOL approved the $3.50 per hour offers. On July 24, 1986, the Comite de Apoyo a los Trabajadores Agricolas, along with twenty-three individual plaintiffs, filed this complaint against DOL and the two orchards, claiming that the approved wage was too low. The Comite (or "CATA") is a New Jersey-based organization consisting of approximately 2000 migrant farmworkers. The complaint stated that members of CATA were "presently employed, ha[d] been employed, and expect[ed] to be employed at Defendant Orchards," and that the individual plaintiffs were "current, past or potential employees of the Defendant Orchards." The complaint sought a declaratory judgment that the USES offers violated 20 C.F.R. § 653.501(d)(4), plus an injunction forbidding DOL to approve the offers.

A flurry of motions ensued. First, the district court granted Hepburn's motion to be dismissed, because none of the plaintiffs had worked for Hepburn during the 1986 season. The court also dismissed Fairview, because plaintiffs' labor contracts with Fairview required wage disputes to be resolved through arbitration. Finally, the court denied plaintiffs' motion for a preliminary injunction against DOL approval, reasoning that the wage rate calculations were "com-

plex, and best left to the expertise of the Department of Labor."

In May 1987, DOL confessed that it had erred in approving the $3.50 per hour wage, and was granted a remand so that it could develop a wage-correlation methodology suitable for the unique facts of this case. On April 4, 1988, DOL submitted its new formula to the court. Under the new formula, DOL would initially compute the PWR for the given crop in the given region, just as it had before. When the PWR was a piece rate and the USES offer was an hourly wage, however, DOL would convert the PWR to an hourly earnings rate and calculate the average of these hourly rates over the last three years. This average would then be discounted by twenty percent, to account for the incentive effect of piece-rate compensation. Finally, when a job description such as "orchard work" consisted of different tasks, DOL would combine the discounted hourly rates for each task proportionally. This composite discounted average hourly rate would serve as the comparison figure for the USES offer in question.

Applying this new methodology, the DOL approved an "orchard work" wage for 1986 of $3.84 per hour. Plaintiffs amended their complaint to challenge the DOL's new wage-correlation methodology. Both sides moved for summary judgment.

In May 1990, the magistrate judge issued a Report and Recommendation advising the district court to award summary judgment to the plaintiffs. The judge first advised that plaintiffs had standing to challenge the application of the new methodology to Fairview's and Hepburn's 1986 offers, as well as the application of the new methodology to any future USES offers. On the merits of plaintiffs' challenge, the judge advised that the twenty percent discount was unreasonable.

In August 1992, the district court rejected this recommendation. The court agreed that plaintiffs had standing to challenge the application of the new methodology to their 1986 wages, but disagreed that they had standing to challenge its application to future USES offers. The court found it too unlikely that DOL would again use the same methodology to approve wages paid to plaintiffs. On the

merits, the court ruled that the twenty percent discount was a reasonable interpretation of the Wagner–Peyser Act, and was consistent with the other regulations promulgated thereunder.

The district court accordingly awarded summary judgment to DOL. Plaintiffs appeal.

## II.

Plaintiffs challenge DOL's new wage-correlation methodology, both as applied to their 1986 wages and as applied to future USES offers. We hold that plaintiffs lack standing to challenge either application of the methodology. In Part A, we explain why plaintiffs lack standing to challenge the 1986 application of the new methodology. In Part B, we explain why they lack standing to challenge future applications of the same.

## A.

■ The law of standing derives from Article III of the Constitution, which limits federal jurisdiction to actual "Cases" or "Controversies." To establish such a Case or Controversy, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). These three requirements—personal injury, causation, and redressability—promote important adjudicative functions. First, they require each litigant to have a real stake in the outcome of the case. Thus they "assure that concrete adverseness which sharpens the presentation of issues," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); this sharpened presentation in turn helps reduce the risk of an erroneous or poorly thought-out decision. Second, they forbid the litigants to pose hypothetical questions for the court to resolve. Thus they permit the concentration of scarce judicial resources on disputes of genuine remedial consequence; this concentration again helps reduce the risk of error. Third, they require the plaintiff to plead more than a generalized dissatisfaction with a law or regulation in order to invoke the jurisdiction of the federal courts. Thus they prevent the judiciary from encroaching upon the constitutional domains of the elected branches of government. *See United States v. Richardson,* 418 U.S. 166, 188, 94 S.Ct. 2940, 2952, 41 L.Ed.2d 678 (1974) (Powell, J., concurring) ("We should be ever mindful of the contradictions that would arise if a democracy were to permit general oversight of the elected branches of government by a nonrepresentative, and in large measure insulated, judicial branch.").

In this case, plaintiffs allege that DOL allowed the orchards to pay them reduced 1986 wages by applying the new wage-correlation methodology; plaintiffs thus meet the injury and causation requirements for standing. The third requirement of redressability, however, is a different matter. Plaintiffs seek a declaration that DOL's wage-correlation methodology was invalid. By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong. Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment. Otherwise plaintiffs with mooted claims of injury could gain federal jurisdiction simply by demanding declaratory relief. The Supreme Court has made clear that the Declaratory Judgment Act, *codified at* 28 U.S.C. §§ 2201–02, did not augur such an upheaval in the traditional law of standing. *See Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 242, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952) ("Th[e] Act was adjudged constitutional only by interpreting it to confine the declaratory remedy within conventional 'case or controversy' limits.").

Plaintiffs profess to have identified such further concrete relief in the prospect of a backpay award from Fairview Orchards. Fairview, the grower that employed plaintiffs in 1986, is no longer a party to this litigation; the district court dismissed it because its labor contract with plaintiffs required wage disputes to be resolved in arbitration. Still, according to plaintiffs, a judgment here that DOL improperly computed USES wages would preclude Fairview from challenging plaintiffs' backpay claim in arbitration. Plaintiffs therefore maintain that their injury is likely to be redressed by the requested relief, because a declaratory judgment would in turn enable them to gain an arbitration backpay award.

DOL disputes this supposition. In the typical case, the party from whom plaintiffs

will seek further concrete relief is also a party to the declaratory action. Here, by contrast, Fairview is not a party to the declaratory action; under established principles of preclusion, Fairview would not be bound by the declaratory judgment. Thus, concludes DOL, any opinion we might express on the computation of USES wages would be purely advisory in the arbitration dispute—precisely the kind of judgment that Article III forbids.

We think DOL correct. "[O]ne general limitation the [Supreme] Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (*citing Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971)). Fairview has not participated in the litigation of this case; it thus will not be bound by our judgment as a party. Nor is Fairview in privity with DOL, such that it would be bound by our judgment as a non-party.[*] Fairview and DOL have none of the special relationships—e.g., familial, commercial, fiduciary—to which courts have traditionally assigned the status of privity. *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* §§ 4448–62 (1981 & Supp.1993) (Res Judicata: Parties Bound). Even in its most abstract conception, privity attaches only to those parties whose interests in a given lawsuit are deemed to be "aligned." *See, e.g., Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.1975). Presumably Fairview wishes the 1986 USES wage to be as low as possible: perhaps the $3.50 per

hour that DOL originally approved. DOL's interest, by contrast, is in devising a methodology that accurately correlates the prevailing wage rate to the USES offer. We cannot assume that these interests align.

Indeed, Fairview's lack of privity with DOL nicely demonstrates why plaintiffs do not have standing to press this action in Fairview's absence. As we noted above, a chief purpose of standing doctrine is to "assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. at 204, 82 S.Ct. at 703. Without Fairview present, the challenge to the accuracy of DOL's new wage-correlation methodology comes only from those parties who wish the USES wage to be as high as possible; "concrete adverseness" is thus diminished. As complicated as are the formulae that DOL has applied in this case, we should like to hear all interested voices before we venture a permanent ruling on the merits. Fairview's absence only exacerbates the risk that we will render an erroneous judgment.

Under mutually reinforcing principles of preclusion and standing, therefore, we shall not render a judgment on the merits of the 1986 wage without Fairview present. The fact that a declaratory judgment may have persuasive or even precedential weight in a subsequent proceeding will not alone suffice to confer standing upon a party seeking to invoke federal jurisdiction. Article III requires more.

In closing, we note DOL's suggestion that plaintiffs might have avoided the procedural trap in which they now find themselves. DOL first suggests that plaintiffs could have sought concrete relief in the form of an injunction compelling DOL to get backpay from Fairview Orchards. Or they could have appealed the district court's dismissal of Fairview Orchards, on the ground that Fairview was a necessary party to their case.

---

[*] To the extent that *Frederick County Fruit Growers Ass'n v. Martin*, 968 F.2d 1265 (D.C.Cir.1992), and *Joseph v. Department of Labor*, 787 F.Supp. 245 (D.D.C.1991), imply otherwise, we respectfully disagree. In *Frederick County*, the court ruled that the growers could not challenge an earlier court ruling which had required DOL to reinterpret its wage-correlation methodology under an analogous job clearance system for foreign workers, even though the effect of this reinterpretation had been to increase the growers' liability and the growers had not been parties to the earlier ruling. 968 F.2d at 1269–72. In *Joseph*, the district court ruled that plaintiffs' challenge to DOL's failure to set a prevailing wage rate for sugar cane cutters in the 1990–91 season was not moot, because plaintiffs could later sue the growers who had employed them during that season for backpay. 787 F.Supp. at 246.

Such hypotheticals are not before us. We do not suggest, however, that a challenge to DOL's new methodology will never prove justiciable. We hold only that a proper case or controversy has not been presented here.

### B.

We next address plaintiffs' standing to challenge DOL's future applications of the new methodology. Such prospective challenges are not per se invalid; the Supreme Court has long made clear that plaintiffs need not "await the consummation of threatened injury to obtain preventive relief." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923). Nevertheless, the threat of injury must be "sufficiently real and immediate to show an existing controversy." *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). In this case, the district court ruled that the threat of injury was not sufficiently real and immediate, because it was unlikely that the DOL would ever apply the methodology to plaintiffs' wages again.

We agree. The problem DOL faced in 1986—correlating a piece rate PWR to an hourly rate offer—is unusual. When DOL developed the methodology to address the problem, it anticipated using it only that once. While plaintiffs contend that DOL has applied the new methodology "several times" since 1986, they cite only two instances, and do not claim to have worked in either case. Indeed, the district court observed that "despite the passage of six years since the filing of the original complaint in this case, the plaintiffs have failed to cite another instance in which DOL used the new methodology to approve wages paid to them."

It is thus conjectural when one of the twenty-three individual plaintiffs or a member of CATA will again be subject to DOL's new wage-correlation methodology. The prospect is not nil, but neither is it "real and immediate." Given the speculative nature of any prospective injury to plaintiffs, a court should refrain from reviewing the merits of the new methodology until a proper controversy arises.

### III.

Our ruling means, of course, that a decision on the merits of DOL's new methodology will not issue at this time. This does not, however, strike us as remiss. Not every agency action needs the imprimatur of a federal court for its validity to be presumed. Federal courts are authorized to resolve only concrete disputes, not to serve as roving boards of review. Here plaintiffs lack standing to challenge DOL's new methodology— whether applied prospectively or in the past. The district court's dismissal of the complaint is therefore

*AFFIRMED.*