Ronald W. BREITIGAN, Plaintiff,

v.

NEW CASTLE COUNTY, Defendant.

No. C.A.02–1333–GMS.

United States District Court,
D. Delaware.

Oct. 13, 2004.

Frank E. Noyes, II, of White & Williams, LLP, Wilmington, Delaware, for Plaintiff.

Michael F. Foster, Department of Justice, State of Delaware, Wilmington, DE, for State of Delaware.Eric L. Episcopo, New Castle County Law Department, New Castle, Delaware, Megan Kochell D'Iorio, New Castle County Law Department, for defendant.

## *OPINION*

SLEET, District Judge.

## I. INTRODUCTION

On July 29, 2002, Ronald W. Breitigan ("Breitigan") filed the above-captioned action.[1] In his second amended complaint, he alleges age discrimination by New Castle County ("the County") in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (D.I. 50 ¶¶ 32–38 (Count I)), and unlawful differential treatment in violation of the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 (D.I. 50 ¶¶ 39–47 (Count II)). He further alleges the County ordinances mandating his retirement are im-permissibly vague under the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1 (D.I. 50 ¶¶ 48–54 (Count III)). In Count IV, Breitigan seeks "a declaration of his rights under the pension plans of which he is a member," including the State Employees' Pension Plan and the New Castle County Retirement System. (D.I. 50 ¶¶ 55–57.) Presently before the court is the County's motions to dismiss, pursuant to Fed. R.Civ.P. 12(b)(6). For the following reasons, the court will deny the motion as to Count I, and grant it as to Counts II and III. Count IV, to which the County did not respond in its brief, is dismissed *sua sponte* by the court for lack of subject matter jurisdiction.

## II. JURISDICTION

The court's jurisdiction for all counts is premised on 28 U.S.C. § 1331 (1993).

## III. BACKGROUND

In June 1988, at age 42, Ronald W. Breitigan was hired as a police officer by the New Castle County Police Department. (D.I. 50 ¶ 9.) Thirteen years later, in May 2001, at the age of 55, Breitigan was forced to retire (id.¶ 10) pursuant to a County ordinance mandating retirement for all police officers at that age, New Castle County, Del., Code § 26.03.908(B) (May 12, 1998). Dating back to 1973 (D.I.51, Ex. B), this ordinance (according to the County) is intended to provide greater "protection of the public by assuring preparedness of its police officers" (id. at 7). The County also has a retirement pension plan, the full benefits of which do not accrue until an officer has twenty years of service credit. Code § 26.04.106(A). Since Breitigan was hired at age 42 and forced to retire at age 55, he

---

1. Although this case was originally assigned to the Honorable Joseph Farnan, Jr., it was reassigned to this court on April 9, 2003. (D.I.39.)

has only thirteen years of credit and does not qualify for full pension benefits.[2]

Alleging age discrimination, Breitigan filed a complaint with the Equal Employment Opportunity Commission ("EEOC") around October 31, 2001. (D.I. 50 ¶ 30.) By a letter dated April 30, 2002, the EEOC issued to Breitigan a "right to sue" letter. (Id. ¶ 31.) Breitigan originally filed suit in this court on July 29, 2002. (D.I.1.) After two amendments to his complaint, Breitigan argues that the County's action was in violation of the AEDA and the Equal Protection Clause, and that the ordinance mandating his retirement violates the Due Process Clause. (D.I. 50 ¶¶ 32–54.) He also requests the court to declare his rights under the retirement plans in which he is a participant. (Id. ¶¶ 55–58.) In response, the County moved to dismiss Counts I–III pursuant to Fed.R.Civ.P. 12(b)(6). (D.I.51.)

## IV. STANDARD OF REVIEW

■■■ The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). Thus, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.*, 838 F.2d 663,

666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir.1997). The court will only dismiss a complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## V. DISCUSSION

### A. ADEA (Count I)

Breitigan's main contention is that the County engaged in unlawful age discrimination in violation of the Age Discrimination in Employment Act of 1967. Section 4(a) of the ADEA reads as follows:

(a) **Employer practices**

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]

29 U.S.C. § 623 (1999). However, in § 4(j) Congress created an exemption for employers of firefighters and law enforcement officers:

---

**2.** Breitigan's second amended complaint also alleges the County represented to him that he would be permitted to work beyond age 55, in spite of the ordinance, so that he would quali-

fy for full pension benefits. (D.I. 50 ¶ 10.) While that fact may be somehow relevant at a later stage of this lawsuit, it has no bearing on this motion to dismiss.

**(j) Employment as firefighter or law enforcement officer**

It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained—

(A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; [and]

. . . . .

3. The issue of which party bears the burden as to the § 4(j) exemption requires a review of the legislative history of the ADEA. In 1989, Supreme Court held that the burden was on the plaintiff to disprove a similar exemption in § 4(f)(2). *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 181, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). When *Betts* was decided, section 4(f)(2) read:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

. . . . .

(2) to observe the terms of a bona fide seniority system or any bonafide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this Act[.]

Age Discrimination in Employment Act of 1967, Pub.L. No. 90–202, § 4, 81 Stat. 602, 603 (1967) (current version at 29 U.S.C. § 623 (1999)).

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

*Id.* Therefore, a *prima facie* case of age discrimination by a police officer requires Breitigan first to allege all the elements of a *prima facie* case of age discrimination under the ADEA generally, and second to allege that the County's retirement plan does not fit into the § 4(j) exemption.[3]

 A *prima facie* case of age discrimination under the ADEA generally requires the plaintiff to allege four elements: (1) he is at least 40 years of age; (2) he is qualified for the position; (3) he suffered an adverse employment decision; and (4) non-members of the protected class were treated more favorably (i.e., circumstances give rise to an inference of discrimination). *Windfelder v. May Dept. Stores Co.,* 93 Fed.Appx. 351, 354 (3d Cir.2004). The County's motion does not claim that Breitigan failed to allege these elements (see D.I. 51 at 3), so the court will assume that a *prima facie* case was so alleged.

As a result of the holding in *Betts,* Congress acted swiftly to overturn the Court. The congressional record states, "the employer bears the burden to plead and prove the defenses and exceptions established in [section 4(f)(2)].... Accordingly, the language of section 4(f)(1) that is commonly understood to signify an affirmative defense ('It shall not be unlawful ... to take any action otherwise prohibited by the ADEA' [ ]) has been incorporated as part of section 4(f)(2)." S.Rep. No. 101–263, at 30 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1535. Thus, it is the phrase "to take any action otherwise prohibited" that signifies a defendant's burden.

The section at issue in this case, section 4(j), was re-enacted in 1996—six years after the 1990 amendment to § 4(f)(2). Conspicuously missing from § 4(j) is the phrase "to take any action otherwise prohibited." Since Congress knew of the correct operative language and declined to include it, the court believes the burden must remain with the plaintiff to disprove the § 4(j) exemption.

■ As a law enforcement officer, Breitigan must also allege that the § 4(j) exemption does not apply to the County's retirement plan. There appears to be no dispute between the parties as to the requirements of § 4(j)(1). However, the parties do disagree over whether the County's action was taken "pursuant to a bona fide . . . retirement plan that is not a subterfuge to evade the purposes of this chapter." § 4(j)(2). In *EEOC v. County of Orange*, the Ninth Circuit elucidated the meaning of this phrase in the context of § 4(f)(2).[4] 837 F.2d 420 (9th Cir.1988). According to that court, to qualify for the exemption a retirement plan must meet four criteria:

(1) it must be the sort of "plan" covered by the section;

(2) it must be "bona fide;"

(3) the County's action must be [pursuant to] the plan; and

(4) the plan must not be a subterfuge to evade the purposes of the Act.

*County of Orange*, 837 F.2d at 422. Since the burden is on the Breitigan to disprove the § 4(j) exemption, he must disprove at least one of these criteria. In the context of a Rule 12(b)(6) motion, this means Breitigan must merely allege that one or more of these criteria are not met by the County's retirement plan. On the other hand, the County's motion will be denied unless it can definitively rebut every allegation by Breitigan that a particular criterion is not met by its retirement plan. For every such allegation, the County must show that "no set of facts" can disprove the criterion in question. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. In this case, only the second and fourth criteria are at issue.[5] Thus, it is incumbent upon the County to demonstrate that Breitigan is incapable of proving any set of facts that would allow him to demonstrate either that the plan is not bona fide, or that the plan is a subterfuge.

### 1. The "Bona Fide" Criterion

■ The definition of "bona fide" is straightforward. A retirement plan is "bona fide" within the meaning of the ADEA if it "exists and pays benefits." *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 166, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). Breitigan clearly alleges that the County's retirement plan is not bona fide (D.I. 50 ¶¶ 36–37), but he does not do so in terms of the *Betts* definition. At this stage, it is sufficient for him to simply allege that the plan is not bona fide with minimal explanation. It is the County's obligation as movant to show that Breitigan cannot prove any set of facts to support this allegation.

---

4. *County of Orange* pre-dates the 1990 amendment to § 4(f)(2), which eliminated the "subterfuge" requirement. S.Rep. No. 101–263, at 18, *reprinted in* 1990 U.S.C.C.A.N. at 1523. However, the pre-amendment language of § 4(f)(2) is substantially similar to the current language of § 4(j)(2). *See supra* note 3. Furthermore, other courts have used analysis of pre-amendment § 4(f)(2) to inform their interpretations of current § 4(j)(2). *See, e.g., Minch v. City of Chicago*, 363 F.3d 615, 623 (7th Cir.2004); *Knight v. State of Georgia*, 992 F.2d 1541, 1545–46 (11th Cir.1993). Therefore, the court will be guided by these pre-amendment interpretations of § 4(f)(2) in its analysis of § 4(j)(2).

5. Breitigan clearly alleges in his second amended complaint that the County's retirement plan is not bona fide. (D.I. 50 ¶¶ 36–37.) However, the court is unable to find the word "subterfuge" anywhere in that complaint. Nevertheless, because the County raises the issue in its brief (D.I. 51 at 4–5) and elicited a responsive argument (D.I. 55 at 9–10), the court will assume that Breitigan's pleading was sufficient to put the County on notice of his intention to challenge the "subterfuge" criterion as well.

■ The County argues that its retirement plan is bona fide because it is not a subterfuge to evade the purposes of the ADEA. (D.I. 51 at 4.) This argument is nothing more than an attempt to prove the "bona fide" criterion by defining it in terms of the "not a subterfuge" criterion. In effect, the county argues that all retirement plans that are not subterfuges are necessarily bona fide. This logic fails because a retirement plan may be neither a subterfuge nor bona fide. In *Betts,* the Supreme Court limited subterfuges to those plans "intended to serve the purpose of discriminating." 492 U.S. at 181, 109 S.Ct. 2854. Conversely, those plans that are *not* "intended to serve the purpose of discriminating" are *not* subterfuges. Applying this rationale to the County's argument, it must follow that a plan not "intended to serve the purpose of discriminating" is necessarily bona fide (i.e., "exists and pays benefits"). It does not take much imagination to envision a plan that neither "exists and pays benefits," nor is "intended to serve the purpose of discriminating." Clearly then, "bona fide" and "not a subterfuge" are independent criteria of the § 4(j) exemption, and must be proven independently.

Furthermore, to the extent that the County argues the existence of facts (perhaps even overwhelming facts) which tend to show that the plan "exists and pays benefits," it is a misplaced argument. The appropriate place for such an argument is in a motion for summary judgment. Therefore, the County's motion to dismiss as to Count I must be denied.

## 2. The "Not a Subterfuge" Criterion

■ Even if the County were able to definitively demonstrate that the plan is bona fide, it would still need to show that the plan is not a subterfuge. Again, the definition is straightforward. A subter-

fuge is "a scheme, plan, stratagem, or artifice of evasion." *Betts,* 492 U.S. at 167, 109 S.Ct. 2854. Given this definition, the Supreme Court held in *Betts* that one aspect of a state-run retirement plan unchanged since 1959 could not possibly be a scheme, plan, stratagem, or artifice of evasion to evade the ADEA, which was not made applicable to the states until 1974. *See id.* at 168–69, 109 S.Ct. 2854. Subsequently, the Eleventh Circuit Court of Appeals in *Knight v. State of Georgia* construed this as a *per se* rule that "bona fide seniority systems or retirement plans that pre-date[] the enactment of the ADEA [cannot] be challenged as subterfuges." 992 F.2d 1541, 1545 (11th Cir.1993). The County argues that this *per se* rule applies here because the municipal ordinance requiring police officers to retire at age 55 dates back to 1973 (D.I. 51 at 3–4)—prior to the amendment explicitly extending the ADEA's coverage to state and local governments. Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 28(a)(2), 85 Stat. 55, 78 (1974).

The court respectfully disagrees with the Eleventh Circuit's analysis of *Betts.* In *Betts,* after defining the term "subterfuge," the Supreme Court stated in reference to an earlier case,

> Viewed in this light, the retirement plan at issue could not possibly be characterized as a subterfuge to evade the purposes of the Act, since it had been established in 1941, long before the Act was enacted. As we observed, "[t]o spell out an intent in 1941 to evade a statutory requirement not enacted until 1967 attributes, at the very least, a remarkable prescience to the employer. We reject any such *per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act."

*Betts*, 492 U.S. at 167, 109 S.Ct. 2854 (*quoting United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977)). The Court went on to apply that reasoning to the facts in front of it:

> While *McMann* remains of considerable relevance to our decision here, we reject the argument that it is dispositive. It is true that the age–60 rule was adopted before 1974, and is thus insulated under *McMann* from challenge as a subterfuge. The plan provision attacked by appellee, however, is the rule that disability retirees automatically receive a minimum of 30 percent of their final average salary upon retirement, while disabled employees who retire after age 60 do not. The 30 percent floor was not added to the plan until 1976, and to the extent that this new rule increased the age-based disparity caused by the pre-Act age limitation, *McMann* does not insulate it from challenge. No "remarkable prescience" would have been required of [appellant] in 1976 for it to formulate the necessary intent to evade the ADEA, and thus the automatic rule of *McMann* is inapplicable.

*Id.* at 169, 109 S.Ct. 2854 (internal citations omitted).

Starting with the Court's language, it did not explicitly state that any plan in place prior to the enactment of the relevant portion of the ADEA is afforded *per se* treatment. Instead, the Court rejected a *per se* rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act. Granted, the Court did use some fairly strong language regarding pre-ADEA plans (e.g., "insulated under *McMann* from challenge as a subterfuge" and "automatic rule of *McMann*"). However, this language is softened by the fact that the retirement plan in *McMann* was established twenty-six (26) years before the ADEA was enacted, and the so-called "age–60" rule in *Betts* was established fifteen (15) years before the ADEA was applied to state and local governments. It would indeed take "remarkable prescience" for the plan in *McMann* and the rule in *Betts* to be considered subterfuges. On the other hand, as Breitigan argues, a retirement plan established on the eve of the enactment of the 1974 amendment to the ADEA would not take "remarkable prescience" and could easily be a subterfuge.

In light of the quoted passages above, it seems clear that the Court did not intend its decisions in *McMann* and *Betts* to be read as creating a *per se* rule. Were there any lingering doubts on this point, however, the Congress removed them in 1990 when it amended the ADEA to directly address the very contention advanced by the County here. In particular, Congress added a new section: "A seniority system or employee benefit plan shall comply with this chapter regardless of the date of adoption of such system or plan." § 4(k). The following passages from the legislative history are even more revealing:

> [T]he bill rejects any distinction between discriminatory provisions that pre-date the ADEA and those that were enacted after the passage of the Act. This clarifies that all forms of age discrimination in employee benefits are forbidden by the Act, regardless of their date of origin.

S.Rep. No. 101–263, at 6, *reprinted in* 1990 U.S.C.C.A.N. at 1510–11.

> [T]he Court [in *Betts*] reaffirmed its holding in *United Air Lines, Inc. v. McMann*, that an employee benefit plan that predated the ADEA could not constitute a subterfuge to evade the purposes of the Act. In doing so, the Court expressly rejected the statement in the

1978 Conference Report and the floor statements of the managers, which had stressed the ADEA's coverage of all employee benefit plans regardless of their date of origin. The Court relied on its prior analysis in *McMann* because, in the Court's view, Congress had repudiated only the specific result of *McMann* but *not* the underlying reasoning of that decision.

S.Rep. No. 101–263, at 15, *reprinted in* 1990 U.S.C.C.A.N. at 1520 (emphasis in original).

> Once again, the Committee intends to overturn the erroneous interpretation of the Supreme Court in this regard. We do so by removing the term "subterfuge" from [section 4(f)(2) ], and by adding a new section 4(k) making explicit the applicability of the ADEA to *all* employee benefit plans. Twenty-three years after the enactment of the ADEA, the law simply should not permit employers who have been discriminating the longest—those with employee benefit plans that pre-date the Act—to continue to discriminate.

S.Rep. No. 101–263, at 29, *reprinted in* 1990 U.S.C.C.A.N. at 1534 (emphasis in original).

These excerpts are clear and to the point—the Court's holding in *Betts* regarding pre-ADEA retirement plans challenged as subterfuges under § 4(f)(2) is overturned. The only remaining question is whether this applies equally to plans challenged as subterfuges under § 4(j)(2). After all, the legislative history states that *Betts* was overturned in two steps: (1) "subterfuge" was eliminated from § 4(f)(2); and (2) Congress added § 4(k). In spite of the first step, section 4(j)(2) was

re-enacted six years later in 1996 *with* the term "subterfuge." Therefore, it could be argued that this supposed *per se* rule still applies to § 4(j)(2) because Congress reintroduced "subterfuge" knowing that was the key term leading to the problematic holdings in *McMann* and *Betts.*

▇ Nevertheless, the court believes this is not the case. Elimination of the term "subterfuge" fixed § 4(f)(2) alone; its elimination was sufficient to overturn the Court's reliance on the definition of that term to exempt pre-ADEA plans. On the other hand, section 4(k) seems to have been a means of preventing providers of retirement plans exempted by other sections of the ADEA—such as the future § 4(j)(2)—from raising the *McMann–Betts* shield ever again. Therefore, aspects of the retirement plan enacted before 1974 are not insulated from attack as a subterfuge. Moreover, any changes to the plan since the 1974 amendment have always been, and continue to be, subject to such attack. Thus, the County's motion to dismiss as to Count I must be denied on these grounds as well.

## B. Equal Protection (Count II)

▇ Breitigan alleges that the County treated him in a manner that violated the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. (D.I. 50 ¶¶ 39–47.) [6] He seems to make two contentions. His main allegation of differential treatment stems from the fact that applicants to the police force under the age of 36 qualify for a full pension at age 55, but older applicants (such as Breitigan) do not qualify for a full pension. (D.I. 50 ¶ 42.) Breitigan also seems to implicitly suggest that he was

---

**6.** The court notes that Breitigan failed to identify the statutory vehicle pursuant to which he brings this equal protection claim, but it can only be 42 U.S.C. § 1983 (2003).

This is the second amended complaint, so the Breitigan has had ample opportunity to include it. Nevertheless, it is a moot point because Count II is dismissed.

treated differently by being forced into retirement at age 55, when he was still qualified to perform his job. The difference between these two allegations is slight at best because the differential treatment at the hiring stage is a natural consequence of having a mandatory retirement age coupled with a minimum required term to qualify for full pension benefits. Regardless, there is no need to split hairs because Breitigan's equal protection claim fails, in either case, under *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (holding that mandatory police retirement at age 50 does not violate equal protection).

In fact, it is baffling that Breitigan even alleged an equal protection violation given the directly controlling precedent of *Murgia*. Breitigan does not attempt to distinguish *Murgia*, nor does he even mention it in his brief. Furthermore, in his second amended complaint he states, "[t]he plaintiff is in a protected class (age)." (D.I. 50 ¶ 46.) The court is confused by this statement because it is absolutely contradicted by *Murgia*.[7] 427 U.S. at 313–14.

Even though age is not a suspect or protected class, the County's mandatory retirement policy must pass rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The County suggests that one justification for its policy is "the protection of the public by assuring the preparedness of its police officers." (D.I. 51 at 7.) This justification was accepted almost verbatim in *Murgia*. 427 U.S. at 314–15, 96 S.Ct. 2562. Since only one plausible justification is enough to pass rational basis review, the County's motion as to Count II is granted.

## C. Due Process (Count III)

Breitigan also claims that two sections of the New Castle County Code are unconstitutionally vague under the "Due Process Clause of the 5th and 14th Amendments to the United States Constitution."[8] (D.I. 55 at 13.) To the extent that he is bringing a claim under the Fifth Amendment, it is dismissed since this was action by the state.

The code sections at issue are the following:

A. A member of the employees' retirement system completing at least thirty (30) years of credited service may retire at his or her option at any age and receive a service retirement annuity. A County police officer, *completing at least twenty (20) years of credited service*, may retire at his or her option at any age up to fifty-five (55), which is

**7.** The court suggests that plaintiff's counsel reacquaint himself with Rule 3.3 of the Delaware Lawyers' Rules of Professional Conduct, which states:
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
[or]
(2) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]

Alleging that age is a protected class is simply incorrect under the Supreme Court's equal protection jurisprudence. Any first-year constitutional-law text book would reveal that fact. Thus, counsel's statement is an arguable violation of Rule 3.3(a)(1). Moreover, although the County disclosed *Murgia*, plaintiff's counsel is skirting dangerously close to violating Rule 3.3(a)(2) by disclosing some cases in the complaint, but not the one case "directly adverse to the position of his client" (i.e., *Murgia* ).

**8.** *See supra* note 6.

mandatory, and receive a service retirement annuity.

B. *A member other than a County police officer* completing at least twenty-five (25) years of credited service may retire, at his or her option, at age fifty (50) or thereafter.

C. *A member* completing fifteen (15) years of credited service may, at his or her option, retire at age fifty-five (55) *or thereafter* and receive a service retirement annuity.

New Castle County, Del., Code § 26.04.106 (May 12, 1998) (emphasis added).

Subsection A of this Section shall permit a full-time County employee to become seasonal or part-time upon reaching age seventy (70). This does not apply to retired employees receiving a pension who subsequently are appointed by the County Council to serve as judgment commissioners. *The compulsory retirement age for a police officer shall be his or her 55th birthday.*

*Id.* § 26.03.908(B) (emphasis added).

Although Breitigan's due process argument pertaining to the emphasized portions of the above ordinances is somewhat unclear (see D.I. 55 at 13), his assertion seems to be that § 26.04.106 is both internally and externally inconsistent. As the court understands it, the key is Breitigan's interpretation of "member" in § 26.04.106(C). He argues that this term must include police officers since adjacent subsection (B) was drafted to explicitly exclude police officers (i.e., "A member other than a County police officer"). In other words, if the drafters had intended to exclude police officers from the coverage of subsection (C), they would have used the same language contained in sub-

section (B). Therefore, under Breitigan's interpretation, both subsection (A) and subsection (C) apply to police officers. This creates an internal conflict because subsection (A) specifies a mandatory retirement age and full pension benefits upon the completion of twenty years of service, whereas subsection (C) specifies a permissive retirement age and full pension benefits upon the completion of only fifteen years of service. Similarly, the external conflict he points out between subsection (C) and § 26.03.908(B) arises because the former specifies a permissive retirement age, while the latter specifies a mandatory retirement age. Therefore, Breitigan asks the court to strike these ordinances "as unconstitutionally inconsistent, unclear, vague and contradictory, at least as applied to this plaintiff." (D.I. 55 at 13.)

█ Even if ordinances with these alleged conflicts could be struck down as violative of due process,[9] the court will not do so here because subsection (C), the source of the problem, does not apply to Breitigan. Subsection (C) only applies to "members" with fifteen years of credited service; Breitigan has only thirteen years of credited service (D.I.50, ¶ 10). Therefore, as applied to this plaintiff, the only relevant ordinance, § 26.03.908(B), clearly states that Breitigan must retire on his 55th birthday. As such, the County's motion as to Count III is granted.

**D. Declaratory Judgment (Count IV)**

Lastly, Breitigan seeks a declaration of his rights under the pension plans of which he is a member, presumably pursuant to 28 U.S.C. § 2201 (1994). (D.I. 50 ¶¶ 55–57.) However, the Supreme Court has

---

**9.** Breitigan cites no case for this proposition, and the court is not going to do his research for him (especially in light of the amount of research the court was required to do, on behalf of both parties, regarding the ADEA claim).

582

stated that the consideration of such relief is within the discretion of the court:

> The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, styled "creation of remedy," provides that in a case of actual controversy a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Court continued by warning that courts "must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions." *Id.* at 243, 73 S.Ct. 236.

In this case, Breitigan has not made the slightest attempt to show that a controversy exists—for example, that the County is about to sue him under the terms of the pension plans. In reality, the court believes Breitigan to be seeking no more than an advisory opinion. Since Art. III courts have no power to issue advisory opinions, *United Pub. Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the court will not endeavor to do so here. Therefore, Count IV is dismissed for lack of subject matter jurisdiction.

## VI. CONCLUSION

For the aforementioned reasons, the County's motion to dismiss is denied as to Count I and granted as to Counts II and III. Furthermore, the court dismisses Count IV *sua sponte* for lack of subject matter jurisdiction.