

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2008

# Breitigan v. State of DE

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Breitigan v. State of DE" (2008). *2008 Decisions.* Paper 496.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/496

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 06-2956

RONALD W. BREITIGAN,

Appellant
v.

STATE OF DELAWARE; NEW CASTLE COUNTY
DIVISION OF POLICE; NEW CASTLE COUNTY,
New Castle County Employees' Retirement
System Board of Trustees

Appeal from the United States District Court
for the District of Delaware
(Civ. No. 02-cv-01333)
District Judge: Hon. Gregory M. Sleet

Before: McKEE and ROTH, <u>Circuit Judges</u>,
and PADOVA,<sup>*</sup> <u>District Judge</u>

Submitted pursuant Third Circuit LAR 34.1(a)
May 13, 2008

(Opinion filed: September 24, 2008)

OPINION

McKEE, <u>Circuit Judge</u>.

     Ronald W. Breitigan appeals a judgment entered in favor of New Castle County

after a jury found that his termination from the New County Castle Police Department

---

    <sup>*</sup>The Honorable John R. Padova, Senior District Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

pursuant to the County's mandatory retirement policy did not violate the Age

Discrimination in Employment Act ("ADEA"). For the reasons that follow, we will

affirm.

**I.**

Inasmuch as we write primarily for the parties who are familiar with this case, we

need not reiterate the factual or procedural background. Rather, we need only consider

the two arguments Breitigan makes on appeal.

Breitigan first argues that the County's application of its mandatory retirement

policy to eliminate his job as a police officer violated the ADEA. Section 623(a) of the

ADEA provides, in relevant part, as follows:

> It shall be unlawful for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's
> age[.]

29 U.S.C. § 623(a)(1). However, governmental employers may adopt and enforce a

mandatory retirement age for law enforcement officers and firefighters if certain

requirements in § 623(j) are met. Section 623(j)(2) provides:

> It shall not be unlawful for [a state or local government] to . . . discharge
> any individual [law enforcement officer or firefighter] because of such
> individual's age if such action is taken . . . (2) pursuant to a bona fide
> hiring or retirement plan that is not a subterfuge to evade the purposes of
> this chapter.

The ADEA does not define "bona fide." However, the district court relied on

2

*United Airlines, Inc. v. McMann*, 434 U.S. 192 (1977) and *Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158 (1989), to hold that a retirement plan was "'bona fide' within the meaning of the ADEA if it 'exists and pays benefits.'" *Breitigan v. New Castle County*, 350 F. Supp.2d 571, 576 (D. Del. 2004). Breitigan argued that the district court should not narrowly define a bona fide plan simply as one that exists and pays benefits. The district court agreed with Breitigan and, in its opinion addressing the summary judgment motions, expanded its earlier definition and held that a retirement plan is bona fide if it "(1) is untainted by bad faith, fraud, or deceit, and (2) exists and pays benefits." 2005 WL 3544296 at *6.

At trial, the parties proposed divergent instructions of "bad faith," and "fraud" and "deceit." They eventually agreed on bad faith and deceit instructions, but were unable to agree on a fraud instruction. Accordingly, the district court gave the following instruction to the jury:

> Fraud is an intentional or deliberate misrepresentation of the truth for the purpose of inducing another, in reliance on it, to surrender a legal right. Fraud, then, is a deceit which, whether perpetuated by words, conduct, or silence, is designed to cause another to act upon it to his or her legal injury.
>
> A statement, claim or document is fraudulent if it was falsely made, or made with reckless indifference as to its truth or falsity, and made or caused to be made with an intent to deceive.
>
> Consequences are intended if a person either acts with the desire to cause them, or acts believing that they are substantially certain to result. Thus one who believes that another is substantially certain to be misled as a result of a misrepresentation intends to mislead, even though he or she may not desire to mislead.

3

App. 145-146.  The County objected before the charge was given because it disagreed with the court's explanation of "intended consequences."   However, Breitigan's counsel did not object to the instruction.

During deliberations, the jury sent a note to the district court, which reads as follows:

> Regarding the definition of fraud, are we required to use the first sentence in the definition of fraud when reading and interpreting the other sentences relating to fraud or can each of the following sentences be used as "stand-alone" definitions of fraud?

App. 153.  The district court instructed the jury that it had to read the sentences together and that they all encompassed the definition of fraud.  Thereafter, the jury continued deliberations without any further questions.  The jury returned a verdict in favor of the County later the same day.

Since Breitigan did not object to the charge, we review only for "plain error in the instructions affecting substantial rights." *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005) (citing Fed.R.Civ.P. 52(d)(2)).  Therefore, "we will reverse the trial court only where a plain error was fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." *Id*. (citation and internal quotations omitted).

Breitigan makes three arguments in this portion of his appeal.  First, he contends that the district court erred in using Black's Law Dictionary as the basis for its fraud

4

instruction because Black's "is not intended as a guide for lay persons to use in deciding a verdict." Breitigan's Br. at 20. However, Breitigan mistates the record. The district court's fraud instruction was not based on the fraud definition in a legal dictionary. Rather, it was based upon a combination of Federal Jury Practice and Instructions, 5th Ed., § 16.08, and the Restatement (Second) of Contracts, § 162 cmt. a. (1979). Moreover, we are not aware of any *per se* rule forbidding reliance on a legal dictionary. As long as the resulting charge clearly and accurately informs the jurors of the applicable legal principles, there is no error.

Breitigan contends that the jury's question reflects jury confusion because "the first and second sentences of the instruction used different language to define fraud" and, therefore, the "jury's question reveals that the jury found some inconsistency between those two sentences." Breitigan's Br. at 13. In Breitigan's view, "[h]ad the Court instructed the jury that each sentence could 'stand alone' as a definition, the verdict could have been different." *Id*. at 14. However, the sentences are not inconsistent. The district court simply gave alternative definitions of fraud. The core meanings of each definition are the same. Moreover, Breitigan's argument that "the verdict could have been different" is simply nothing more than conjecture. It does not establish error.

In a variation of the same argument, Breitigan contends that the district court's instruction should not be a "dictionary definition of fraud" because the "dictionary definition does not clearly set out the actual elements of the cause of action for fraud."

5

Breitigan's Br. at 20. He argues that the district court's fraud instruction should have been based on the definition of common law fraud found in *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983). However, this is puzzling because Breitigan is not asserting a cause of action for fraud. He is asserting an ADEA claim, and considerations of fraud were only relevant to determining the bona fides of the County's retirement plan. Moreover, the substance of the fraud instruction used contains all of the general elements of the definition of common law fraud found in *Stephenson*, and it was therefore tantamount to the definition that Breitigan urged the upon district court.

## II.

Section 26.04.106 of the County Code provides that full benefits under the County's retirement plan do not accrue until an officer has 20 years of service credit. Breitigan claims in Count III of his second amended complaint, that this section of the County Code was unconstitutionally vague. The district court explained why that argument is meritless in its thorough and well-reasoned opinion granting the County's Rule 12(b)(6) motion as to Count III. 350 F. Supp. 2d at 580-81. We can add little to the district court's analysis and discussion. Accordingly, we will affirm the district court's dismissal of Count III substantially for the reasons set forth in that opinion.

## III.

For the aforementioned reasons, we will affirm the order of the district court entering judgment in favor of the County and against Breitigan.